

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-1995

# Gottshall v Conrail Corp

Precedential or Non-Precedential:

Docket 91-1926

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Gottshall v Conrail Corp" (1995). *1995 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 91-1926


JAMES E. GOTTSHALL,

Appellant

V.

CONSOLIDATED RAIL CORPORATION


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 89-03102)


Argued May 7, 1992

Before:   BECKER, NYGAARD and ROTH,
Circuit Judges

On Remand from the Supreme Court of the United States
June 24, 1994
Submitted On Remand from Supreme Court: August 29,1994


(Opinion Filed  June 6, l995 )

William L. Myers, Jr., Esquire
Davis & Myers
1601 Market Street
Suite 2330, Five Penn Center
Philadelphia, PA 19103
     Attorney for Appellant

Ralph G. Wellington, Esquire
Schnader, Harrison, Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

Attorney for Appellee

OPINION OF THE COURT


ROTH, Circuit Judge:


This case returns to us on remand from the United States Supreme Court. The action was originally brought by James E. Gottshall, a railroad worker, against his employer, Consolidated Rail Corporation (Conrail). Gottshall sought damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60 (1988), for negligent infliction of emotional distress. Concluding that the FELA provided no remedy for the plaintiff's emotional injuries in this case, the district court granted Conrail's motion for summary judgment. Gottshall v. Consolidated Rail Corp., 773 F. Supp. 778 (E.D. Pa. 1991). This Court, by a divided panel, reversed and remanded, finding the injuries to Gottshall to be both foreseeable and possessed of sufficient indicia of genuineness. Gottshall v. Consolidated Rail Corp., 988 F.2d 355 (3d Cir. 1993).

Following the denial of its petition for rehearing, Conrail filed a writ of certiorari with the United States Supreme Court to obtain review of this case and of the companion case of Carlisle v. Consolidated Rail Corp., 990 F.2d 90 (3d Cir. 1993). The Supreme Court agreed to hear both cases. By its decision of June 24, 1994, the Court reversed both cases and remanded them to

us.  Consolidated Rail Corp. v. Gottshall, --- U.S. ---, 114 S. Ct. 2396 (1994).  The Court instructed us to enter judgment against the plaintiff in Carlisle and to reconsider the negligent infliction of emotional distress claim in Gottshall under the common law zone of danger test.  Id. at ---, 114 S. Ct. at 2411-12.  For the reasons that follow, we find that the plaintiff in Gottshall cannot satisfy the strictures of the zone of danger test as articulated by the Supreme Court.

I.

Because the facts of this case have been discussed extensively in earlier opinions, we will be brief.  James Gottshall served on a Conrail work crew which was assigned on an oppressively hot August day to replace defective railroad track in a remote location between Watsontown and Strawberryridge, Pennsylvania.  Gottshall's work crew included his friend of fifteen years, Richard Johns.  The crew was supervised by Michael Norvick.  Conrail was under time pressure to prepare for a safety inspection and so the work crew was pushed to complete the task.  Conrail provided only one scheduled break, for lunch, and discouraged unscheduled breaks.  Conrail did, however, make water available to the men on an as-needed basis.[1]

---

[1].  There is no evidence in the record to indicate either that the conditions under which the crew was working violated any work rules or work conditions, agreed upon by the union and management or that any union member working on the crew that day was not physically qualified to perform his assigned duties.  Cf. Holliday v. Consolidated Rail Corp., 914 F.2d 421, 424 (3d Cir. 1990):

About two and one-half hours into the job, while Richard Johns was cutting a rail, he collapsed. Gottshall and the other workers rushed to Johns' assistance. Johns, who had high blood pressure and was overweight, was having trouble with the weather conditions. The crew members tended to him until Norvick ordered them to return to work. Within five minutes Johns collapsed again. This time it was apparent that Johns was seriously afflicted. Gottshall realized that Johns was having a heart attack and, because Gottshall was the only person at the scene certified in cardiopulmonary resuscitation, he began administering CPR to Johns.

Supervisor Norvick also appreciated that Johns now required immediate medical attention. Norvick's initial attempts to radio to the base station for help were unsuccessful because, unbeknownst to Norvick, Conrail had taken the base radio off-line for repairs. Norvick finally drove out in his truck to secure help. He summoned paramedics who arrived at the site some forty minutes after Gottshall had begun CPR. By this time, however, Johns had died. The paramedics ordered the crew to leave the body where it lay, covered by a sheet, until the coroner arrived.

(..continued)

> [P]laintiffs . . . were allegedly injured by performing the normal duties of their jobs as structured by management and as monitored by the union. As work rules and working conditions represent issues that are at the heart of labor-management negotiations, the court will not upset the delicate balance of the collective bargaining agreement absent a more compelling reason.

Shortly thereafter, Norvick directed the crew to return to work. The crew continued working for several hours. The coroner on his arrival determined that Johns had suffered a heart attack caused in part by the heat, humidity, and strenuous activity.

Gottshall experienced a severe reaction to his involvement in the incident. In the days that followed, the crew returned to the site to work the same long hours under the same sweltering weather conditions.[2] Gottshall, however, became increasingly distraught and feared that he too would have a heart attack. After a few days, Gottshall left work and secluded himself in the basement of his home. He was then admitted to a psychiatric hospital where he was diagnosed with major depression and post traumatic stress disorder. His symptoms included extensive weight loss, suicidal preoccupations, insomnia, and nausea.

## II.

Gottshall brought this action in the United States District Court for the Eastern District of Pennsylvania pursuant to the FELA, 45 U.S.C. §§ 51-60 (1988). We had jurisdiction on appeal under 28 U.S.C. § 1291 (1988). Following remand from the Supreme Court, we now have jurisdiction under 28 U.S.C. § 2106 (1988).

---

[2]. The parties do not contest that the radio link was back in commission during this subsequent period.

Our task on remand is to apply the common law zone of danger test, as defined by the Supreme Court, in reconsidering Gottshall's FELA claim. Both parties agree, and the Supreme Court has advised, that the present factual record is sufficiently developed for this purpose. See Gottshall, --- U.S. ---, 114 S. Ct. at 2411. See also Casey v. Planned Parenthood, 14 F.3d 848, 856-63 (3rd Cir. 1994) applic. for stay denied, --- U.S. ---, 114 S. Ct. 909 (1994) (finding no need to reopen record when "the Supreme Court remanded `for proceedings consistent with this opinion'"); Kamen v. Kemper Financial Services, Inc., 939 F.2d 458, 459-460 (7th Cir. 1991), cert. denied, 502 U.S. 974 (1991). Therefore, with the zone of danger test in mind, we will address the issues on the existing record.

Because this appeal is from the district court's granting of Conrail's motion for summary judgment, our standard of review of whether Gottshall's claim remains actionable under the FELA is plenary. See Dent v. Cunningham, 786 F.2d 173, 175 (3d Cir. 1986). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, an entry of summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In conducting this evaluation, we are obliged to view the facts in a light most favorable to Gottshall as the non-moving party. See Erie Telecommunications v. Erie, 853 F.2d 1084, 1093 (3d Cir. 1988).

Conrail, in pressing its motion for summary judgment, makes two principal arguments which it draws from the Supreme Court's discussion of the FELA and the zone of danger test. First, Conrail draws an analogy between the facts in this case and those in Carlisle, 990 F.2d 90 (1993), in support of its premise that generalized work conditions cannot give rise to an actionable FELA claim for emotional distress. Second, Conrail maintains that the zone of danger test must be construed to permit recovery only by those persons who are at risk of an actual physical impact.

Gottshall vigorously contests both positions. He asserts that the extreme working conditions, which caused Richard Johns' heart attack and under which Conrail forced Gottshall to work both before and after Johns' death, caused him subjectively to fear for his physical safety and to suffer a complete emotional collapse with attendant physical manifestations. Gottshall also argues for a broader construction of the zone of danger, either one that does not require a threat of physical impact or one that accepts merely the risk of slight physical contact, such as dust in the eye or smoke inhalation.

A.

In this case, the Supreme Court for the first time recognized a plaintiff's right to recover under the FELA for negligently produced emotional distress. See Gottshall, --- U.S. at ---, 114 S. Ct. at 2409. The Court found support both in the

statute and at common law for extending the FELA's coverage to purely emotional claims.[3]  In examining the statute itself, the Court reiterated the premise that the FELA should be liberally construed in a manner consistent with its remedial purpose.  Id. at ---, 114 S. Ct. at 2404.  See also Rogers v. Missouri Pacific R. Co., 352 U.S. 500 (1957).  Noting that the FELA is silent on the issue of recovery for negligent infliction of emotional distress, the Court turned to common law principles to fill the statutory gaps.  Gottshall, --- U.S. at ---, 114 S. Ct. at 2404.  See also Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 568 (1987).  Cf. Urie v. Thompson, 337 U.S. 426, 432 (1958).  The Court surveyed the States and determined that nearly all have permitted claims for emotional injury in one form or another.  Gottshall, --- U.S. at ---, 114 S. Ct. at 2405.  Based in part on these observations, the Court found that within the broad duty to furnish workers with a safe work place there was "a duty under FELA [for an employer] to avoid subjecting its workers to negligently inflicted emotional injury."  Id. at ---, 114 S. Ct. at 2408, (quoting Buell, 480 U.S. at 558).

---

[3].  By "purely emotional claims," we mean mental disturbance unaccompanied by a contemporaneous infliction of physical injury. This concept is distinguishable from damages for pain and suffering which often attach to claims for physical injury. Moreover, in defining "purely emotional claims" we do not take a position as to whether emotional distress, to be actionable, must produce accompanying physical manifestations in reaction to the mind's disturbance.  Because Gottshall's emotional disturbance did affect him physically, e.g., extensive weight loss, we need not reach that issue.  See Bloom v. Consolidated Rail Corp., 41 F.3d 911, 915 n.5 (3d Cir. 1994).

Although the Court was willing to recognize such a duty as a conceptual matter, it also appreciated that, as a practical matter, limitations were warranted to restrict the scope of an FELA employer's duty. The Court was concerned by what it saw, if recovery were permitted for emotional distress, as the "very real possibility of nearly infinite and unpredictable liability for defendants." Id. at ---, 114 S.Ct. at 2405. The Court noted that the FELA retains the common law concept of negligence and so "`does not make the employer the insurer of the safety of his employees.'" Id. ---, 114 US.Ct. at 2408, (quoting Ells v. Union Pacific R. Co., 329 U.S. 649, 653 (1947)). Developing this theme of limited liability, the Court turned to several common law "tests" or "rules" which have restricted the right to recover for negligent infliction of emotional distress.

The Court reviewed the "physical impact," the "zone of danger," and the "relative bystander" common law tests. It rejected the "physical impact" and the "relative bystander" tests as either too restrictive or inapplicable, and it settled on the "zone of danger" test as the best measure of recovery under the FELA. Id. at ---, 114 S. Ct. at 2410-11. In doing so, the Court consulted the common law of 1908, the year the FELA was enacted, and found that the zone of danger test was considered both more progressive and less restrictive than its counterparts of the same era. Id. The Court characterized these qualities of the

zone of danger test as consistent with the FELA's broad construction and remedial purpose.

The Court noted nevertheless that the statute's primary purpose remained the protection of workers from physical, rather than emotional, perils.  Id. at ---, 114 S. Ct. at 2410.  See also Lancaster v. Norfolk & W. Ry. Co., 773 F.2d 807, 813 (1985), cert. denied, 480 U.S. 945 (1987).  Acknowledging that the FELA's goal of liberal recovery was tempered by the statute's emphasis on physical injuries, the Court found, however, that the statute's reference to "injury" could encompass both physical and emotional injury and that the zone of danger test best harmonized these considerations:

> Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not.  Railroad employees thus will be able to recover for injuries – physical and emotional – caused by the negligent conduct of their employers that threatens them imminently with physical impact.

Gottshall, _____ U.S. at _____, 114 S.Ct. at 2410-11.

### B.

Although the Supreme Court generally upheld an FELA cause of action for negligent infliction of emotional distress,

the Court did not precisely define what situations might place a plaintiff in a position to be within the zone of danger.[4]

For instance, does the Supreme Court's zone of danger test require the imminent threat of a physical impact or does it require merely a threat of physical harm?  In our recent decision in Bloom v. Consolidated Rail Corp., 41 F.3d 911 (3d Cir. 1994), we noted the Supreme Court's various articulations of the zone of danger test at certain instances throughout the opinion are somewhat imprecise.[5]  41 F.3d at 914-15.  We found, however, in Bloom that it was not necessary to expressly resolve this issue as the plaintiff was threatened with neither physical harm nor physical impact.  We conclude from our review of the facts in the present case that we again do not have to resolve this issue.

_____

[4].  In moving on to our discussion of the zone of danger, we will not dwell on the negligence of Conrail.  Whether Conrail's conduct placed Gottshall in a zone of danger is a different question than whether or not Conrail's conduct satisfied the requirement of ordinary negligence (which is necessary for FELA liability in any case).  That negligence, however, to the extent that Conrail interrupted the crew's radio link without warning and without providing an alternate means of communication, is admitted by the parties.  Because there is agreement on this aspect of Conrail's negligence, we do not need to go on to resolve whether a combination of other factors, such as the extreme working conditions and/or Conrail's ordering the crew to go back to work while Jones's body lay covered beside the track, might also constitute negligence on Conrail's part.

[5].  For instance, at one point the Court refers to the zone of danger test as limiting recovery to plaintiffs "who are placed in immediate risk of physical harm by that conduct."  Gottshall, --- U.S. ---, 114 S. Ct. at 2406 (emphasis added). The Court later refers to an actionable claim as one involving "a worker within the zone of danger of physical impact."  Id. at ---, 114 S. Ct. at 2410 (emphasis added).

We will first consider whether James Gottshall was subjected to the threat of a physical impact. In their briefs, the parties contest the specific meaning of the term "impact." Recognizing that we cannot anticipate every possible situation that may give rise to an impact, we decline to provide a comprehensive definition of what constitutes an impact. Suffice it to say that what Gottshall experienced involved no impact and Gottshall therefore was not in the zone of danger, if the test is to be construed to require threat of impact. If the sun's rays and heated air constitute physical impacts, then many work place situations could give rise to an impact within the meaning of the test.[6] Such an encompassing definition of impact would undercut the Court's desire to draw reasonable limits to employer liability for emotional distress claims.

We will next consider whether Gottshall was placed in immediate risk of physical harm. Here, the crew was working under time pressure on an oppressively hot August afternoon and the base radio was taken off-line for repair. However, as we noted earlier, there is no evidence in the record to indicate that Gottshall, who was thirty four and in good physical condition, was not physically qualified to perform his assigned

---

[6]. We do not determine at this time whether our definition of impact under the FELA reaches contacts with such intangibles as smoke, gases, or drugs. See, e.g. Plummer v. United States, 580 F.2d 72, 75-76 (3d Cir. 1978) (holding, in non-FELA context, that exposure to tuberculosis bacilli constituted physical impact under both the zone of danger and physical impact tests).

duties.  While it was extremely hot that afternoon in northcentral Pennsylvania, it was still, for purposes of the zone of danger test, within the bounds of conditions under which Conrail crews were expected to work.  Indeed, Gottshall does not contend that the conditions under which he was working violated any work rules.  In sum, we simply do not view the physical working conditions to be extreme and dangerous enough as to place this plaintiff in immediate risk of physical harm.[7]

### III.

We will, therefore, affirm the district court's grant of summary judgment in favor of Conrail.  We find that Gottshall was not within the zone of danger because Conrail's negligence

---

[7]. In Bloom, we noted that it is not clear whether a plaintiff would be required, in a FELA action for negligent infliction of emotional distress, to fear physical injury to himself as a prima facie element or whether the lack of such fear would merely be considered in determining damages.  Bloom, 41 F.3d at 915 n.4. We also noted in Bloom that some common-law zone of danger tests include contemporaneous fear as a prima facie element, but that the Supreme Court in Gottshall appeared to adopt the damages approach.  Id.  As in Bloom, it is not necessary in this case to decide the issue since Gottshall otherwise fails to satisfy the zone of danger test.  We do note, however, that to the extent that fear does go to liability, Gottshall, like Bloom, would fail a contemporaneous fear requirement.  Gottshall claims that his mental distress arose after Johns' death and was brought about by his fear that the heat and strenuous work pace would also cause him to suffer a fatal heart attack.  As the district court pointed out, however, Gottshall cannot show that he perceived any threat of physical harm during the time that Conrail had negligently closed down the radio link, nor can he show that any negligent act was committed by Conrail during the ensuing period when he feared the working conditions might cause him to suffer a heart attack.  Gottshall, 773 F. Supp. at 782.

threatened him neither with the threat of physical impact nor with the threat of physical harm.