

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2007

# Hart v. Hillside Twp

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1983

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Hart v. Hillside Twp" (2007). *2007 Decisions.* Paper 1331.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1331

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 06-1983

———

TIMOTHY HART,
                    <u>Appellant</u>,

v.

TOWNSHIP OF HILLSIDE; HILLSIDE FIRE DEPT;
CHRISTOPHER ALFANO; FRANK W. CASWELL, SR.;
KAREN MCCOY-OLIVER,

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-05841)
District Judge: Honorable Joseph A. Greenaway, Jr.

———

Submitted Under Third Circuit LAR 34.1(a)
March 9, 2007

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>, and POLLAK,[*] <u>District</u> <u>Judge</u>

———

OPINION
———

POLLAK, <u>District Judge</u>.

———————————————

[*] Hon. Louis H. Pollak, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

Timothy Hart appeals the grant of summary judgment against him arising from his non-selection as a firefighter with the Hillside Fire Department. The District of New Jersey exercised jurisdiction under 28 U.S.C. § 1331; 38 U.S.C. § 4323(b)(3); and 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 1367. For the reasons explained herein, we affirm.

I.

Because we write primarily for the parties, we discuss only those facts necessary to our decision. On November 1, 2001, the Hillside Township Clerk wrote the New Jersey Department of Personnel (NJ DOP) to ask for a certificate of eligible candidates[1] for the position of firefighter in Hillside. In December 2001, Hart submitted his application for employment as a firefighter with the Hillside Fire Department. At the time, he was a member of the New Jersey Army National Guard, but did not provide any information on his application concerning his current military obligation.

In March 2002, Hart was invited to interview with the fire department. At the interview, he mentioned that he was a member of the National Guard, prompting at least

_____

[1] The NJ DOP "certificate of eligibles" ranked candidates that were considered eligible for the position on the basis of their written and physical exams. The Hillside Fire Department was free to determine which of the candidates were preferred based on their own criteria, such as a psychological evaluation or criminal history check. Indeed, some candidates listed as eligible on the NJ DOP list were later removed from the list because, upon evaluation by the Hillside Fire Department, it was determined that they were actually not eligible.

2

thirteen questions about his military obligation. Following his interview, Hart submitted to a psychological evaluation, which was the next step in the hiring process.

On April 19, 2002, the Firefighter Selection Committee submitted a memorandum ranking the preferred eligible candidates for the firefighter position. The list read as follows:

1. Louis Whitaker
2. Michael Moran
3. Christopher Alfano
4. John Kozar
5. Jeffrey Barron
6. Timothy Hart

A171. Hart was listed sixth in the list of six candidates.[2] On May 13, 2002, Hillside hired two new firefighters, Louis Whitaker and Michael Moran, who were listed as the first and second choices on the Firefighter Selection Committee's list of candidates.

On May 15, 2002, the Firefighter Selection Committee issued an additional memorandum listing in the preferred order those candidates recommended for the

---

[2] On April 22, 2002, then-Fire Chief Frank Caswell issued a memorandum to the mayor explaining the recommendation of the Firefighter Selection Committee. This memorandum included an identical preference list of the candidates, and explained how the preference list was compiled after a review of "their application submittals, background checks, criminal history check, medical evaluation, drug testing[,] and psychological results." A176. With regard to Hart, the memorandum noted: "One final candidate, Mr. Timothy Hart, who has finished sixth in the process due to his interview and background check, is not recommended for hiring at this time. He shall remain on the list for future consideration." *Id.*

firefighter position in the event that Hillside decided to hire a third new firefighter.  This

list was:

1. Christopher Alfano
2. Jeffrey Baron
3. Timothy Hart

A180.[3]  Based on this list, Hillside hired Christopher Alfano, effective February 24,

2003.

On September 11, 2003, Plaintiff filed an appeal of his non-selection with the NJ

DOP, contending that he was bypassed for selection because of his membership in the

National Guard.  On March 12, 2004, the NJ DOP issued a Final Administrative Action

of the Merit System Board, explaining that "the appointing authority did not treat the

appellant differently than the other applications" and that "there is no violation of any

Merit System law or rules."  A241.

On December 5, 2003, prior to receiving the NJ DOP's decision, Hart filed a four-

count complaint in the District Court for the District of New Jersey, contending that he

was bypassed for the Hillside firefighter position because of his membership in the

National Guard, in violation of the Uniformed Services Employment and Reemployment

Rights Act (USERRA), 38 U.S.C. § 4311 *et seq.*, and the New Jersey Law Against

---

[3] This list mirrors the memorandum of April 19, 2002, except that Jonathan Kozar was removed from consideration because it was determined that he had falsified information on his application.  *See* A180.

Discrimination (NJ LAD), N.J. Stat. Ann. 10:5-1 *et seq.*[4]  Both parties filed motions for summary judgment on June 10, 2005.

On March 17, 2006, the District Court granted defendants' motion for summary judgment.  This appeal followed.

## II.

Plaintiff appeals the grant of summary judgment against him on both the USERRA claim and the NJ LAD claim.  We will address each in turn.  Our standard of review of a grant of summary judgment is plenary.  *Gottshall v. Consol. Rail Corp.*, 56 F.3d 530, 533 (3d Cir. 1995).  Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In reviewing the District Court's grant of summary judgment, we view the facts in a light most favorable to the nonmoving party, and draw all reasonable inferences in his favor.  *Gottshall*, 56 F.3d at 533.

## A.

Under the USERRA, "A person who is a member of . . . a uniformed service shall not be denied initial employment . . . by an employer on the basis of that membership . . . ."  38 U.S.C. § 4311(a).  To establish a claim under the USERRA, the plaintiff has the initial burden of production to show that, by a preponderance of the

---

[4] Plaintiff additionally alleged a claim under the Open Records Act, N.J. Stat. Ann. 47:1A:1 *et seq.*, and a claim for slander, but those were dismissed pursuant to a stipulation between the parties on February 27, 2006.

evidence, "the employee's military service was 'a substantial or motivating factor'" in the adverse employment decision. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Id.* The statute is explicit that the defendant carries the burden of persuasion once plaintiff has made his/her initial showing that military service was "a substantial or motivating factor." *See* 38 U.S.C. § 4311(c) ("An employer shall be considered to have engaged in actions prohibited—(1) . . . if the person's membership . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . .").

In the case at bar, we will assume without deciding that Hart met his *prima facie* burden of showing that his membership in the National Guard was "a substantial or motivating factor" in his non-selection as a firefighter in Hillside Township. *See Sheehan*, 240 F.3d at 1013. The burdens of production and persuasion then shift to the defendants to show that the same action would have been taken anyway. *Id.* Here, the defendants provided multiple legitimate, non-discriminatory reasons for Hart's non-selection. As the record shows:

1. Hart seemed to take the interview too casually;[5]

---

[5] Defendants contends that Hart used the word "gook" during his interview, but Hart claims that this never happened.

6

2. Hart was inappropriately dressed at the interview;

3. Hart has a criminal history, including an incident with a BB gun and a disorderly persons offense related to an incident with his girlfriend;

4. Hart has a subpar driving record, including three moving violations and four accidents;

5. Hart's psychological evaluation suggested that he was immature.

Hart has put forth no evidence that would dispute any of the above contentions, all of which constitute legitimate, non-discriminatory reasons for Hart's non-selection. Accordingly, we must affirm the District Court's grant of summary judgment on Hart's USERRA claim.[6]

B.

Hart contends that the district court applied the wrong burden-shifting framework to his NJ LAD claim. To this we will now turn.

The New Jersey Law Against Discrimination (NJ LAD) prohibits an employer from discriminating against an employee or prospective employee "because of the

---

When considering summary judgment, we draw all reasonable inferences in favor of the nonmoving party, and therefore will not include Hart's alleged racial slur as a legitimate, non-discriminatory reason for his non-selection.

[6] Defendant further contends that his USERRA claim must be heard by a jury because there exist disputes of material fact. Because we find that defendants are entitled to summary judgment as a matter of law, even when all factual inferences are drawn in favor of the plaintiff, we conclude that this matter need not go before a jury.

7

liability for service in the Armed Forces of the United States." N.J. Stat. Ann. 10:5-12(a). When analyzing cases under the NJ LAD, courts look to the closest analogous federal statute and adopt its evidentiary framework. *See Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 906–07 (N.J. 1990) ("The substantive and procedural standards that we have developed under the State's LAD have been markedly influenced by the federal experience."). In the employment-discrimination context, New Jersey courts typically look to federal law and employ the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 65 (3d Cir. 1996). "However, the Court has never embraced the *McDonnell Douglas* test literally, invariably, or inflexibly." *Grigoletti*, 570 A.2d at 907. Rather, New Jersey courts recognize that the *McDonnell Douglas* framework "provide[s] only a general framework for analyzing unlawful discrimination claims and must be modified where appropriate." *Erickson v. Marsh & McLennan*, 569 A.2d 793, 799 (N.J. 1990). Thus, New Jersey courts "have not hesitated to depart from the *McDonnell Douglas* methodology if a rigid application of its standards is inappropriate under the circumstances." *Grigoletti*, 570 A.2d at 912.

In situations where *McDonnell Douglas* does not fit the circumstances of the case, New Jersey courts borrow standards from other federal employment discriminations statutes that better fit the needs of the claims being raised under the NJ LAD. *See, e.g.*, *Anderson v. Exxon Co.*, 446 A.2d 486, 495 n.6 (N.J. 1982) ("Our decision . . . comports with a similar shifting of the burden of proof of affirmative defenses to the employer in

8

suits brought in federal courts under the Equal Pay Act. . . . as compared with litigation under Title VII of the 1964 Civil Rights Act (42 U.S.C.A. § 2000e *et seq.*) in which the burden remains on the plaintiff."); *Brosshard v. Hackensack Univ. Medical Cntr.*, 783 A.2d 731, 738 (N.J. Super. Ct. App. Div. 2001) ("[W]e take this opportunity to incorporate the philosophy of sections 12114 and 12210 of the [Americans with Disabilities Act] into the LAD.").

The federal statutory analog to Hart's NJ LAD claim is the USERRA. Accordingly, we agree with Hart that, in addressing his NJ LAD claim, the District Court should have employed USERRA's burden-shifting framework, as enunciated in *Sheehan*, rather than the *McDonnell Douglas* framework. *See Sheehan*, 240 F.3d at 1012. As noted above, the key difference between the *Sheehan* and *McDonnell Douglas* frameworks is that, under *Sheehan*, once the plaintiff has established his/her *prima facie* case, the burdens of production and persuasion shift to the defendants to prove that the adverse employment action would have been taken despite the plaintiff's protected status. *Id.* at 1013.

However, while we find that the District Court should have applied the USERRA burden-shifting framework (as explained in *Sheehan*) to Hart's NJ LAD claim, rather than the *McDonnell Douglas* framework, we also find that, under the correct *Sheehan* standard, defendants are entitled to summary judgment. We applied the *Sheehan* burden-shifting framework to Hart's USERRA claim, *supra*, and affirmed the grant of summary judgment to the defendants. Analyzing Hart's NJ LAD claim under the USERRA

9

framework yields the same result.

## III.

For the reasons explained above, we will affirm.