977 So.2d 962 (2007)
Richard ZENTNER
v.
SEACOR MARINE, INC.
No. 2006 CA 2049.
Court of Appeal of Louisiana, First Circuit.
October 24, 2007.
*963 Michael S. Harper J., Brent Barry Harper & Barry, LLP, Lafayette, LA, for Plaintiff-Appellant, Richard Zentner.
Alfred J. Rufty, XII, Rufus C. Harris, III, Harris & Rufty, LLC., New Orleans, LA, for Defendant-Appellee, Seacor Marine, Inc.
Before McKAY, GORBATY, and CANNIZZARO, JJ.[1]
CANNIZZARO, J.
The plaintiff, Richard Zentner, appeals a summary judgment rendered in favor of the defendant, Seacor Marine, Inc. ("Seacor"), dismissing his claims against it. We affirm the trial court's judgment.

FACTS AND PROCEDURAL HISTORY
Seacor employed Mr. Zentner as a captain aboard its vessel, the M/V ANGELA G. On Saturday, April 21, 2001, a verbal confrontation occurred, aboard, the vessel between Mr. Zentner and one of the deckhands, Mr. Kendrick Davis.[2] At the time, Mr. Zentner was seated behind a table in the "TV room" of the vessel, writing in a logbook, when Mr. Davis walked into the room and threatened him. According to *964 Mr. Zentner, Mr. Davis came toward him from the opposite side of the room, stating, "I'm going to take you on the back deck and kick your ass." Mr. Zentner replied, "It's not going to happen on the boat, period." At that moment, the relief captain, Mr. Howard Nowlin, walked in and stepped between the two men, ending the confrontation.
Afterwards, Mr. Zentner went upstairs to the wheelhouse and e-mailed the Seacor office to report the incident and to request that he and Mr. Davis be separated upon the vessel's return to port. Meanwhile, Mr. Davis had entered the wheelhouse and again challenged Mr. Zentner to a fight on the back deck, to which he replied, "there's no way anything like that's going to happen."
Seacor later responded by e-mail that it would not separate the two men. Mr. Zentner claimed that he was humiliated when Mr. Davis circulated a copy of Seacor's e-mail response among the co-captain and other crew members, who congratulated Mr. Davis with "high fives" upon learning that the separation request had been denied. Notwithstanding its response, Seacor removed Mr. Davis from the vessel when it returned to port three days later.
Mr. Zentner filed a suit against Seacor under the Jones Act, 46 U.S.C.App. § 688, and general maritime law, alleging Seacor was negligent in failing to properly supervise Mr. Davis and in failing to remove him from the vessel in a timely manner. He further alleged that Mr. Davis' presence and insubordination on the M/V ANGELA G created a hostile work environment, which rendered the vessel unseaworthy. As a result of Seacor's negligence and the unseaworthiness of the M/V ANGELA G, Mr. Zentner claimed he suffered severe psychological injuries, including depression and anxiety.
Seacor filed a motion for summary judgment, arguing that Mr. Zentner could not recover for purely psychological damages because he did not satisfy the "zone of danger" test as established by the United States Supreme Court in Consolidated Rail Corporation v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). It also argued that Mr. Zentner's testimony, with nothing more, was insufficient to prove either negligence or unseaworthiness and, therefore, summary judgment was correct as a matter of law.
Following the hearing on the motion, the trial court rendered judgment in favor of Seacor, stating, "[b]ased on Mr. Zentner's description of the events, I find that he is not entitled to recovery, so I will grant summary judgment to Seacor."

STANDARD OF REVIEW
The proper standard of review for an appellate court considering summary judgment is de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties Ltd., 93-1480, p. 1 (La.4/11/94), 634 So.2d 1180, 1182. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. Art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. Art. 966(A)(2). La. C.C.P. Art. 966(C)(2) provides, in pertinent part:
The burden of proof remains with the movant. However, if the movant will *965 not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. [Emphasis added.]

LAW AND DISCUSSION
The Jones Act allows an injured seaman to bring a negligence suit against his employer. 46 U.S.C.App. § 688. Negligence may arise in many ways including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the owner's duty of care. 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-21, at 312 (2d ed.1994). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable care under the circumstances. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335-336 (5th Cir.1997).
With respect to seaworthiness, an owner of a vessel has an absolute duty to furnish a seaworthy vessel, and a breach of that duty gives rise to a claim for general damages. To state a cause of action for unseaworthiness, the plaintiff must allege an injury "caused by a defective condition of the ship, its equipment or appurtenances. . . . Members of the crew of a vessel are also warranted as seaworthy. . . ." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-25, at 333-34 (2d ed.1994).
The U.S. Supreme Court, in Consolidated Rail, held that an employee may recover damages based on negligence under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 et seq., for mental or emotional injuries only if the employee can show he was within a zone of danger of physical impact.[3] The "zone of danger" test adopted by the Supreme Court for actions brought pursuant to FELA, and extended to Jones Act claims, is described as follows:
Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. Railroad employees thus will be able to recover for injuries  physical and emotional  caused by the negligent conduct of their employers that threatens them imminently with physical impact.
Consolidated Rail, 512 U.S. at 556, 114 S.Ct. 2396. "Whether an employee's claim satisfied the zone of danger test is a legal question." Id., 512 U.S. at 546, 554, 114 S.Ct. at 2409-2410. Further, the Supreme Court noted that, regarding injuries which constituted "mental or emotional harm (such as fright or anxiety) that [are] caused by the negligence of another and that [are] not directly brought about by a physical injury," substantial limitation must be placed "on the class of plaintiffs that may recover for emotional injuries *966 and on the injuries that may be compensable." Id., 512 U.S. at 546, 114 S.Ct. at 2405.
In Consolidated Rail, one of the plaintiffs, Mr. Alan Carlisle, worked for Conrail for many years, and after a reduction in the work force, he was required to take on additional duties and to work long, erratic hours for weeks at a time. As a result, he eventually suffered a nervous breakdown and had to be hospitalized. The Court characterized Mr. Carlise's injury as a complaint that the railroad gave him too much work, which "plainly [did] not fall within the common law's conception of the zone of danger." Id., 512 at 558, 114 S.Ct. at 2412. For this reason, the Court held that it would "not take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment," id., and remanded the case with instructions to enter judgment for Conrail.
In contrast, the other Consolidated Rail plaintiff, Mr. James Gottshall, suffered in response to a particular incident rather than from a stressful work environment. While working, Mr. Gottshall was assigned to replace a stretch of track during extremely hot and humid conditions. On the first day, a co-worker of Mr. Gottshall's collapsed and died on the tracks of a heart attack, which the coroner reported was brought on by heat, humidity, and heavy exertion. Mr. Gottshall was required to continue working on the track for the next few days under the same hot and humid conditions. He began to fear that he would die as his friend did, and was eventually diagnosed with major depression and post-traumatic stress disorder. See id. at 535-37, 114 S.Ct. at 2401.
Noting Mr. Gottshall's assertion that he was within the zone of danger of a physical impact, the Supreme Court remanded the claim to the Third Circuit, stating it was not adequately briefed on the issue. See id. at 558, 114 S.Ct. at 2411. On remand, the Third Circuit affirmed the grant of summary judgment in favor of the railroad, holding that Mr. Gottshall did not claim any physical impact and thus could not satisfy the "zone of danger" requirement. See Gottshall v. Consolidated Rail Corp., 56 F.3d 530, 535 (3rd Cir.1995). The court concluded that the working conditions were not extreme or dangerous enough to place Mr. Gottshall in immediate risk of physical harm, thereby failing the zone of danger test. Id.
In Ferguson v. CSX Transporation, 36 F.Supp.2d 253 (E.D.Pa.1999), aff'd, 208 F.3d 205 (3rd Cir.2000), a railroad employee suffered severe emotional distress as a result of verbal and physical threats by a co-employee, who threatened to kill him and to burn down his house, who made a slashing motion across his neck, and who threw rocks and lumber at the plaintiff from a distance of just several feet while making verbal threats. The court rendered summary judgment in favor of the defendant, finding that the plaintiff was not within a zone of danger of a physical impact within the meaning of the Consolidated Rail standard.
In this case, it is undisputed that Mr. Zentner sustained no actual physical impact or harm during his verbal confrontations with Mr. Davis. Thus, under the Consolidated Rail decision, whether or not Mr. Zentner has a negligence claim against Seacor for his psychological injuries depends upon whether the threatened physical impact placed him in reasonable apprehension of physical harm.
In support of its motion for summary judgment, Seacor submitted Mr. Zentner's deposition testimony. On the other hand, Mr. Zentner relied on that same testimony in opposing Seacor's motion. At his deposition, Mr. Zentner testified that he remained seated during the encounter with *967 Mr. Davis in the TV room and that Mr. Davis, though walking toward him, never got within seven feet of him. He testified that Mr. Davis would have had to crawl over the table to reach him, but did not. Mr. Zentner acknowledged that Mr. Davis had no weapon and his hands were not clenched into fists, as if to indicate he wanted to fight. According to Mr. Zentner, the entire incident transpired in the time it took Mr. Davis to walk from the door to the center of the TV room or approximately seven feet. With regard to the incident in the wheelhouse, Mr. Zentner admitted that he felt "challenged" rather than threatened and that nothing happened because Mr. Davis departed the wheelhouse seconds later. Mr. Zentner also testified that from the time he sent the e-mail to Seacor to the crew change three days later, the only complaint he had with Mr. Davis was his failure to complete his assigned tasks. He also acknowledged that Mr. Davis apologized to him for the disagreements between them as he departed the vessel at the time of the crew change.
In addition to Mr. Zentner's deposition testimony, Seacor also submitted a copy of the e-mail message Mr. Zentner had sent requesting that it separate the two men. Nowhere in the message does Mr. Zentner indicate that he felt threatened or feared for his safety.
Considering the evidence submitted in support of and in opposition to Seacor's motion for summary judgment, nothing indicates that the verbal confrontations between Mr. Zentner and Mr. Davis placed Mr. Zentner in reasonable apprehension of physical harm so as to satisfy the "zone of danger" test enunciated in Consolidated Rail. Furthermore, Mr. Zentner offered no evidence that the M/V ANGELA G was not a reasonably safe vessel upon which to work, that Mr. Davis was a violent person or that Seacor knew or should have known that Mr. Davis might pose a danger to other crew members when it hired him. Absent any such evidence, we agree with the trial court, that, as a matter of law, Mr. Zentner does not have a claim against Seacor based in negligence under the Jones Act or for unseaworthiness of its vessel for any psychological injuries allegedly sustained by him as a result of his verbal confrontations with Mr. Davis.

DECREE
Accordingly, for the reasons set forth herein, we affirm the summary judgment rendered in favor of Seacor Marine, Inc., dismissing Mr. Zentner's claims against it.
AFFIRMED.
NOTES
[1] The Honorable James F. McKay, III, Judge, the Honorable David S. Gorbaty, Judge, and the Honorable Leon A. Cannizzaro, Jr., Judge, all members of the Fourth Circuit Court of Appeal, are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] Although Mr. Zentner alleged in his petition that the verbal confrontation occurred on April 3, 2001, the evidence in the record indicates that the incident occurred on April 21, 2001. Also, the petition incorrectly refers to Kendrick Davis as "Kendrick Williams."
[3] The Jones Act incorporates and makes applicable to seaman the substantive recovery provisions of the FELA. See Miles v. Apex Marine Corp., 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990).