NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4013
_____

BRUCE BAYER, on his own behalf,
and on behalf of minor children
G.Z., P.Z., and J.B.;
ANGELA BAYER, on her own behalf,
and on behalf of minor children
G.Z., P.Z., and J.B.

Appellants

v.

MONROE COUNTY
CHILDREN AND YOUTH SERVICES;
COMMONWEALTH OF PENNSYLVANIA;
MONROE COUNTY; SAT BAHL;
WILLIAM BROWNING; HEATHER DRY;
BRENDA RANTE; P. J. GEESE;
ELIZA LONCOLA-HICKS; TARA SURRAGO;
IRETHA NOLLS; DETECTIVE ROBSON;
SGT. BOWMAN; CHIEF JOHN LAMBERTON;
MARGHERITA WORTHINGTON;
PRESIDENT JUDGE RONALD VICAN;
ELIZABETH WEEKS; DAVID WILLIAMSON;
BARRY COHEN; DAWN THORTON;
ADEL HEINLEIN; DR. JUDY MUNOZ;
DONNA ASURE; ROBERT NOTHSTEIN;
WALTER CLATCH; ELLIS KARLE;
DR. TAROLI; DR. COLEEN COPPER;
DISTRICT ATTORNEY
MARK PAZUHANICH, Former DA;
DISTRICT ATTORNEY'S OFFICE
MONROE COUNTY;
REGIONAL CHILDREN AND YOUTH;
FOSTER CARE DIVISION OF MONROE COUNTY

1

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-04-cv-02505)
Honorable A. Richard Caputo, District Judge
_____

Argued December 16, 2010

BEFORE:  SLOVITER, GREENAWAY, JR., and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed:  February 9, 2011)
_____

Peter G. Loftus (argued)
Loftus Law Firm
P.O. Box V, 1207 N. Abington Rd.
Waverly, PA 18471

   <u>Attorney for appellants</u>

Gerald J. Geiger (argued)
Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri
712 Monroe St.
Stroudsburg, PA 18360

   <u>Attorneys for Monroe County appellees</u>

Harry T. Coleman (argued)
41 North Main St.
3rd Floor Suite 316
Carbondale, PA 18407

   <u>Attorneys for Pocono Mountain Regional</u>
   <u>Police Department appellees</u>

Calvin R. Koons
John G. Knorr, III
Office of the Attorney General
Appellate Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17102

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

This matter comes on before this Court on appeal from a series of seven orders the District Court entered, the last one on September 23, 2009, granting the various defendants summary judgment and leaving plaintiffs-appellants without any cognizable claims and without any defendants against whom to assert any possible claims. In particular the orders from which plaintiffs appeal were entered on September 12, 2005, September 29, 2005, February 16, 2006, June 29, 2006, January 10, 2007, October 15, 2007, and September 23, 2009. For the reasons we discuss in this opinion, we will affirm all of the orders from which plaintiffs have appealed.

I.

Because this case has been before this Court on an earlier appeal, we rely in part on our prior opinion in this case in Bayer v. Monroe County Children and Youth Services., 577 F.3d 186 (3d Cir. 2009), in reciting the relevant factual and procedural history. As we described in our prior opinion:

> Plaintiffs P.Z. and G.Z. were minor children (9 and 11 years old, respectively) at the time of the events at issue in this case. Plaintiff Angela Bayer is their biological mother, and Bruce Bayer, Angela's second husband, is their stepfather. Angela Bayer had primary custody of the children, and the children's biological father, Gabriel Zhanay, lived elsewhere and had visitation rights. According to

Angela Bayer's testimony, Zhanay was allowed to take the children for visits for part of one day each month.

Id. at 188-89. On Friday, January 10, 2003, an unidentified individual placed a telephone call to the Monroe County Children and Youth Services (MCCYS) reporting that the two minor children, G.Z. and P.Z., had been abused sexually by their biological father, Gabriel Zhanay. Id. at 189. This call did not initiate the first contact between plaintiffs and MCCYS, as

> [a]ccording to defendants, '[p]rior to January 14, 2003, P.Z. and G.Z. were interviewed not less than ten times by CYS regarding allegations of abuse.' These allegations included that their biological father had been serving the children alcohol, teaching them to steal, physically abusing them, showing them pornography, engaging in sexual acts in their presence, and encouraging self-mutilation. Defendants note that, when interviewed, the children 'often recanted their statements.' Plaintiffs do not dispute the frequency of prior contact with Monroe County Children and Youth Services, but deny P.Z. and G.Z. '"often" recanted their stories.' The parties also dispute whether the Bayers, or the children themselves or their therapists, were responsible for reporting abusive conduct to Monroe County Children and Youth Services.

Id. at 189 n.1 (citations omitted) (alteration in original). On the same date as the telephone call, January 10, 2003, as a result of the allegations, Detective Michael Robson of the Pocono Regional Police Department served plaintiffs Angela and Bruce Bayer, the mother and step-father of G.Z. and P.Z., with a notice of placement regarding protective custody. Id. at 189. Pursuant to that notice, the children were removed from their home

4

and placed in protective custody during an investigation of the children's biological father concerning the allegations of sexual abuse.[1] Id.

Three days later, on Monday January 13, MCCYS caseworker Heather Dry forwarded the information regarding the alleged abuse and removal of the children from the home to Elizabeth Weeks, the agency's solicitor. Id. The following day, January 14, Weeks filed an emergency petition in the Monroe County Court of Common Pleas seeking an order authorizing MCCYS to take custody of the children, and Common Pleas Judge Margherita Worthington granted the petition on the same day. Id. at 189-90.

Two days later, there was a hearing on the custody matter before Judge Worthington at which the biological parents, as well as the children, appeared and were represented by counsel. Id. at 190. At that hearing the parties reached an agreement that the children would remain in the custody of MCCYS and undergo psychological evaluation and that there would be no contact between the parents and the children until the next court hearing on February 20. The biological parents stated on the record that they understood and consented to that agreement, though Angela Bayer claims that she was under duress at that time.

On January 28, MCCYS determined that the sexual assault allegations against the children's biological father were unfounded.[2] In accord with that finding, at the February

---

[1] The parties dispute whether the police took the children into custody or whether Angela and Bruce Bayer brought the children to MCCYS. See Bayer, 577 F.3d at 189. It is not necessary for us to resolve that dispute on this appeal or to remand the case to the District Court for resolution of that question.

hearing MCCYS recommended that MCCYS return the children to the Bayers' custody and the Court concurred with that recommendation and ordered the return of the children. The Court specifically noted that there had been reasonable efforts to prevent placement with MCCYS, but that the parties agreed on protective custody while represented by counsel. Moreover, the Court believed that the allegations of sexual abuse and the need for psychological evaluations showed that protective custody had been necessary and was in the best interest of the children.

In the aftermath of the foregoing proceedings, Angela and Bruce Bayer, on behalf of themselves and the minor children, G.Z. and P.Z., and the Bayers' biological son J.B., who was not removed from the home, filed a pro se complaint on November 18, 2004, asserting numerous claims against almost equally numerous defendants under various provisions of state and federal law.[3]

The District Court issued a series of six orders and associated written opinions in response to motions filed by the parties, the end result being that only plaintiffs' section 1983 procedural due process claims against two defendants—Heather Dry, a caseworker

---

[2] MCCYS continued its investigation into the psychological health of the children and investigated whether the children had been coached to claim that their father sexually abused them or had made up the stories on their own.

[3] On December 22, 2004, the District Court ordered plaintiffs to retain an attorney to represent the minor children, but plaintiffs did not comply with that order and consequently the court dismissed the children from the suit on April 8, 2005. Subsequently, however, the children came to be represented and the Court reinstated them as plaintiffs on June 23, 2006. On January 10, 2007, the Court clarified that, although the minor children had been reinstated as plaintiffs, they were entitled to pursue only the claims that had not been dismissed prior to plaintiffs' June 23, 2006 motion to reinstate the minor children as plaintiffs. Plaintiffs do not challenge that ruling on appeal.

6

at MCCYS, and Sat Bahl, her supervisor—survived summary judgment. Though Dry and Bahl claimed that they were immune from plaintiffs' action, the District Court ruled that neither was entitled to either absolute or qualified immunity, and that plaintiffs could present evidence in support of their section 1983 Fourteenth Amendment procedural due process claim against them. The crux of plaintiffs' claim was that the failure to hold a court hearing until six days after the minor children had been removed from the Bayer household and placed in protective custody was a violation of plaintiffs' constitutional rights.

Dry and Bahl appealed to this Court, and in an opinion dated August 14, 2009, we reversed the order of the District Court denying Dry and Bahl immunity as we concluded that they were entitled to at least qualified immunity.[4] Bayer, 577 F.3d at 191-93. We held that even assuming "that plaintiffs had a constitutional right to a post-deprivation hearing within 72 hours and that this right was clearly established at the relevant time, we consider it objectively reasonable for defendants to have believed, under the law existing at the time, that their particular conduct in this case was lawful and in keeping with this right." Id. at 193. We agreed with Dry and Bahl

> that they could reasonably have believed they had discharged
> their responsibilities with respect to plaintiffs' procedural due
> process rights by advancing the case to the point where a
> hearing could take place within the constitutionally prescribed
> time frame, and could reasonably have expected that their

---

[4] Although we discussed the issue, we did not decide whether Dry and Bahl were entitled to absolute immunity because our ruling that they were entitled to qualified immunity rendered a determination with respect to absolute immunity unnecessary to a resolution of the case.

7

>          attorney and the court would hold the hearing in a timely
>          fashion.

Id. (citation and internal quotation marks omitted).  We explicitly declined to impose a

duty on MCCYS employees to "intervene in the court's scheduling of the subsequent

dependency hearing."  Id.  On remand, the District Court on September 23, 2009, entered

an order granting Dry and Bahl summary judgment.

Inasmuch as the District Court had dismissed plaintiffs' case against all of the

defendants except for Dry and Bahl before their appeal, the order on remand left

plaintiffs without any claims to assert and without any defendants against whom to assert

any possible claim.  Plaintiffs now appeal to this Court, contending that the District Court

erred in:  (1) dismissing their section 1983 Fourteenth Amendment procedural due

process claims; (2) dismissing their section 1983 Fourteenth Amendment substantive due

process claims; (3) ruling that certain defendants were entitled to qualified immunity; (4)

invoking the Rooker-Feldman doctrine; (5) dismissing their claims brought pursuant to

Pennsylvania state law; and (6) ruling that punitive damages were not appropriate in the

circumstances of this case.[5]  At oral argument plaintiffs' counsel clarified that they were

limiting their challenges to the District Court's rulings with respect to the following

defendants:  P.J. Geese, a caseworker at MCCYS; Detective Michael Robson of the

Pocono Mountain Regional Police; and Monroe County/ MCCYS.  The District Court

---

[5] Plaintiffs also challenge the District Court's determination that Bruce Bayer, the step-father of P.Z. and G.Z., lacked standing to bring suit.  Here, the crux of plaintiffs' complaint relates to the custody of P.Z. and G.Z., and, because Bruce Bayer lacked any legal or other right to custody of those children, we conclude that the District Court correctly ruled that he lacked standing to bring this suit.

had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the order of the District Court and, to the extent that the Court dismissed this case under Fed. R. Civ. P. 12(b)(6), we review the complaint to ascertain if it contains sufficient factual matter, that, accepted as true, states a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

## II.

A district court's decision on a motion for summary judgment is subject to plenary review. See McKenna v. City of Phila., 582 F.3d 447, 460 (3d Cir 2009). Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On the appeal we view all of the facts in the light most favorable to the nonmoving party. Gottshall v. Consolidated Rail Corp., 56 F.3d 530, 533 (3d Cir. 1995).

## III.

We will analyze plaintiffs' section 1983 due process claims first, because they are the only federal law claims that they maintain on appeal. Plaintiffs, however, did not name Detective Robson as a defendant in the counts of their complaint asserting Fourteenth Amendment procedural and substantive due process violations under section 1983. We therefore will not analyze those claims as to him.

As we have discussed, in our prior decision in Bayer we held that MCCYS caseworker Dry and her supervisor, Bahl, were entitled to qualified immunity. 577 F.3d at 191-93. Plaintiffs now appeal the dismissal of their claims against MCCYS

9

caseworker P.J. Geese. But plaintiffs do not raise any claims against Geese separate and distinct from those they brought against Dry and Bahl or allege that Geese was involved in the underlying matter in a manner different than Dry and Bahl had been.[6] Therefore, Geese is entitled to qualified immunity just as we held that Dry and Bahl were.

The foregoing determination leaves Monroe County/MCCYS as the sole potential remaining defendant with respect to plaintiffs' section 1983 procedural and substantive due process claims. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978). A plaintiff can show a local government's custom and/or policy in the following manner:

> Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.
>
> In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.

---

[6] In fact, if anything, Geese was less involved in this matter than Dry and Bahl.

Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (internal citations and quotation marks omitted) (alteration in original).

The District Court dismissed Monroe County/MCCYS as a defendant because,

> reading the Complaint in the light most favorable to the Plaintiffs, no policy, practice, or custom of Monroe County has been alleged. Plaintiffs make only conclusory allegations that MCCYS has a policy of profiting illegally from removing children from their homes, however, the crux of Plaintiffs' allegations is that Defendants overstepped the bounds of current procedures governing the removal of children. Plaintiffs simply do not allege a direct causal link between a policy, practice, or custom of Monroe County and the alleged violations of their constitutional rights.

App. at 42. We agree with the District Court that plaintiffs' conclusory allegations are insufficient to support their contention that Monroe County/MCCYS has a policy, custom, or practice of "seiz[ing] minor children from their parents without prior judicial authorization, and without any reasonable basis to believe such a seizure is necessary to protect children from imminent harm." App. at 300, 305. We therefore will affirm the Court's judgment dismissing Monroe County/MCCYS as a defendant in plaintiffs' complaint for failure to state a cognizable claim upon which relief may be granted insofar as the complaint asserted section 1983 procedural and substantive due process claims.

Because of our disposition of plaintiffs' section 1983 procedural and substantive due process claims, which, as mentioned, are the only federal claims that plaintiffs maintain on appeal, we need not discuss in detail the remainder of the issues that they raise on appeal. We, however, do add the following.

11

Plaintiffs, in their brief on this appeal, argue that the District Court erred in ruling that some defendants, not specified by name in the brief, were entitled to immunity. But, because at oral argument plaintiffs' counsel clarified that their arguments on appeal were limited to Geese, Robson and Monroe County/MCCYS, and the District Court did not rule that any of those defendants were entitled to immunity, there is no reason for us to address the issue.

Plaintiffs' brief also urges that the District Court erred in dismissing their state law claims. Plaintiffs do not, however, specify which state law claims should not have been dismissed. In any event, we do not find any error in the Court's dismissal of the various state law claims, and, as plaintiffs do not provide any supporting rationale for their argument to the contrary,[7] we will not reverse the District Court's rulings with respect to the state law claims.

Although plaintiffs challenge the District Court's application of the Rooker-Feldman doctrine in this case, to the extent that the Court relied on the Rooker-Feldman doctrine, it did so only with respect to defendants Dry, Geese, and Robson. But, as we have discussed, both Dry and Geese are entitled to qualified immunity, and Robson was

---

[7] Plaintiffs claim that the District Court "dismissed the State Pendente Claims without a discussion on the validity of each claim based upon the Rooker-Feldman doctrine." Appellants' br. at 21. That characterization of the Court's reasoning is incorrect, as the Court analyzed each of plaintiffs' state law claims in its written opinions. The only state law claim that the Court ruled that the Rooker-Feldman doctrine barred was plaintiffs' substantive due process claim pursuant to Article I, Section 1 of the Pennsylvania Constitution. But even without regard for the Rooker-Feldman doctrine, the Court found that that claim also was barred because there is no private right of action for damages arising from violations of the Pennsylvania Constitution. Thus, a reversal of the application of the Rooker-Feldman doctrine would not help plaintiffs.

12

not named as a defendant in the counts of plaintiffs' complaint alleging section 1983 procedural and substantive due process violations—the only federal claims that plaintiffs maintain on appeal—so we need not review the District Court's application of the Rooker-Feldman doctrine.[8]

IV.

In summary, because our affirmance of the District Court's orders leaves plaintiffs without any viable claims or any defendants against whom to assert any possible claims their case must fail. Therefore we will affirm the District Court's orders of September 12, 2005, September 29, 2005, February 16, 2006, June 29, 2006, January 10, 2007, October 15, 2007, and September 23, 2009. Thus, we are affirming the orders granting summary judgment and dismissing plaintiffs' case in its entirety.

---

[8]Of course, in view of our outcome plaintiffs are not entitled to punitive damages or, indeed, compensatory damages either.

13