Bruce **BAYER**, on his own behalf, and on behalf of minor children Gabriel Zhanay, Pedro Zhanay and John Bayer; Angela Bayer, on her own behalf, and on behalf of minor children Gabriel Zhanay, Pedro Zhanay and John Bayer

v.

**MONROE COUNTY CHILDREN AND YOUTH SERVICES; Commonwealth of Pennsylvania; Monroe County; Sat Bahl; William Browning; Heather Dry; Brenda Rante; P.J. Geese; Eliza Loncola–Hicks; Tara Surrago; Iretha Nolls; Detective Robson; Sgt. Bowman; Chief John Lamberton; Margherita Worthington; President Judge Ronald E. Vican; Elizabeth Weeks; David Williamson; Barry Cohen; Dawn Thorton; Adel Heinlein; Dr. Judy Munoz; Donna Asure; Robert**

Nothstein; Walter Clatch; Ellis Karle; Dr. Taroli; Dr. Coleen Copper; District Attorney Mark Pazuhanich, Former DA; District Attorney's Office Monroe County; Regional Children and Youth; Foster Care Division of Monroe County Sat Bahl and Heather Dry, Appellants.

No. 07–4267.

United States Court of Appeals, Third Circuit.

Argued April 20, 2009.

Filed: Aug. 14, 2009.

Gerard J. Geiger, Esquire (Argued), Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri, Stroudsburg, PA, Attorney for Appellants.

Peter G. Loftus, Esquire (Argued), The Loftus Law Firm, Waverly, PA, Attorney for Appellees, Bruce Bayer and Angela Bayer.

Before SCIRICA, Chief Judge,
SLOVITER and FISHER, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

In this action brought principally under 42 U.S.C. § 1983, at issue is whether defendants, a social worker for the Monroe County Children and Youth Services and her supervisor, are entitled to absolute or qualified immunity in connection with an allegedly unconstitutional delay in holding a dependency hearing after the agency removed children from their mother's custody. The District Court determined defendants were entitled to neither form of immunity, and denied their request for summary judgment on those grounds. We disagree and will reverse, holding that defendants are entitled to qualified immunity.

I.

Plaintiffs P.Z. and G.Z. were minor children (9 and 11 years old, respectively) at the time of the events at issue in this case. Plaintiff Angela Bayer is their biological mother, and Bruce Bayer, Angela's second husband, is their stepfather. Angela Bayer had primary custody of the children, and the children's biological father, Gabriel Zhanay, lived elsewhere and had visitation rights. According to Angela Bayer's testimony, Zhanay was allowed to take the

children for visits for part of one day each month.

On Friday, January 10, 2003, a telephone call was placed to Monroe County Children and Youth Services, reporting that G.Z. and P.Z. had been sexually abused by their biological father. On several prior occasions, the agency had received reports that the biological father was harming the children.[1] The parties dispute who made the January 10 telephone call. Defendants contend the Bayers themselves reported that the children's biological father had been abusing the children and was about to arrive at their home to exercise his visitation rights, while the Bayers claim it was one of the children's therapists who telephoned. At the end of that day, the children were placed in the custody of Monroe County Children and Youth Services. The parties dispute whether the police took the children into custody or whether Bruce and Angela Bayer brought the children to Monroe County Children and Youth Services. The

Bayers were served with a notice of placement regarding protective custody signed by Detective Michael Robson of the Pocono Regional Police Department. Pursuant to that order, P.Z. and G.Z. were removed from the Bayer home and placed in protective custody with Monroe County Children and Youth Services while the children's biological father was investigated for alleged sexual abuse.[2]

On Monday morning, January 13, Defendant Heather Dry, a caseworker at Monroe County Children and Youth Services, forwarded to attorney Elizabeth Weekes, the agency's solicitor, information involving the alleged abusive conduct and the removal of the children from the Bayer home, so that Weekes could file an emergency petition in the Monroe County Court of Common Pleas on behalf of the agency to take protective custody of G.Z. and P.Z.[3] The next day, Tuesday, Weekes filed the petition. That same day, Monroe County Court of Common Pleas Judge

---

1. According to defendants, "[p]rior to January 14, 2003, P.Z. and G.Z. were interviewed not less than ten times by CYS regarding allegations of abuse." App. at 81. These allegations included that their biological father had been serving the children alcohol, teaching them to steal, physically abusing them, showing them pornography, engaging in sexual acts in their presence, and encouraging self-mutilation. Defendants note that, when interviewed, the children "often recanted their statements." *Id.* at 81. Plaintiffs do not dispute the frequency of prior contact with Monroe County Children and Youth Services, but deny P.Z. and G.Z. " 'often' recanted their stories." *Id.* at 284. The parties also dispute whether the Bayers, or the children themselves or their therapists, were responsible for reporting abusive conduct to Monroe County Children and Youth Services.

2. Under 42 Pa. Cons.Stat. Ann. § 6324(3) (West 2001 & Supp.2009), "[a] child may be taken into custody ... [b]y a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that

the child is suffering from illness or injury or is in imminent danger from his surroundings, and that his removal is necessary."

The parties do not dispute that the Bayers agreed to placing the children in the custody of Monroe County Children and Youth Services; the Bayers assert, however, that they "agreed for the children to be taken for the weekend only to avoid contact with their biological father." App. at 286–87 (emphasis removed).

3. According to defendants, at the time of these events the Monroe County Court of Common Pleas did not make judges available on weekends to handle emergency dependency petitions, despite its apparent obligation under 23 Pa. Cons.Stat. Ann. § 6315(b) (West 2001 & Supp.2009) to "insure that a judge is available 24 hours a day, 365 days a year to accept and decide ... actions" such as these. Defendants note that this is no longer the case; the court is now open during these times to receive and address such petitions. Defs.' Br. 4 n. 3.

Margherita Worthington signed an order continuing custody in Monroe County Children and Youth Services and scheduling a hearing for Thursday, January 16.

On January 16, Judge Worthington held a hearing at which both biological parents, as well as the children, were present and represented by counsel. The parents agreed to a continuance until February 20, 2003; in the interim, the children remained in the custody of Monroe County Children and Youth Services and underwent psychological evaluation. Angela Bayer claims she was under duress when she agreed to the continuance. On January 28, Monroe County Children and Youth Services determined the sexual abuse case against the biological father was unfounded, and at the hearing on February 20, recommended the court return the children to the Bayers' custody. The court did so, finding that the agency's custody over the children in the period from January 10 to February 20 had been necessary due to the allegations of abuse and had been in the best interests of the children.

On November 18, 2004, plaintiffs filed a complaint in federal court raising forty-one claims against thirty-one defendants under various provisions of state and federal law. In earlier orders not at issue in this appeal, the District Court dismissed many of those defendants and claims. In an order filed October 15, 2007, the court granted the remaining defendants' motion for summary judgment in part, dismissing all such defendants save two—caseworker Heather Dry and her supervisor, Sat Bahl. The court also dismissed all claims against these two defendants except the claim under 42 U.S.C. § 1983 that these defendants, under color of state law, deprived plaintiffs of their Fourteenth Amendment right to procedural due process.[4] Viewing the record in the light most favorable to plaintiffs, the court found that plaintiffs' "procedural due process rights were violated based on the failure to receive a post-deprivation hearing in a period which would satisfy due process." In the court's view, this period extended no further than 72 hours after the children were removed from their mother's custody.[5] Defendants

**4.** Among the claims dismissed were plaintiffs' substantive due process claims under the Fourteenth Amendment, their procedural and substantive due process claims under the Pennsylvania Constitution, and their claims for punitive damages. The court also dismissed, for lack of standing, all § 1983 claims brought by Bruce Bayer and J.B., the sibling of P.Z. and G.Z.

**5.** With respect to Bahl, the District Court recognized that he cannot be liable for this violation under § 1983 on a respondeat superior theory, and that plaintiffs "instead must show that [he] played a personal role in violating their rights." *See Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir.1990). The court concluded that plaintiffs had created a triable issue "as to whether Defendant Bahl had personal knowledge regarding the Fourteenth Amendment procedural due process violation."

In light of the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (May 18, 2009), it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding Bahl liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983. *See id.*, 129 S.Ct. at 1949 ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities."). We need not resolve this matter here, however. As discussed *infra*, we believe qualified immunity shields both Dry

interposed alternative assertions of absolute and qualified immunity, which the court rejected.

Defendants filed a timely notice of appeal. They challenge only the District Court's rulings that they are not entitled to either qualified or absolute immunity with respect to plaintiffs' Fourteenth Amendment procedural due process claims.

## II.

The District Court exercised jurisdiction under 28 U.S.C. § 1331. Under the collateral order doctrine, 28 U.S.C. § 1291 confers appellate jurisdiction over the District Court's denial, at the summary-judgment stage, of defendants' claim that they are entitled to absolute or qualified immunity, to the extent that denial turns on questions of law. *Walter v. Pike County*, 544 F.3d 182, 190 (3d Cir.2008) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)); *see also id.* (noting that, in this context, " 'we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove; but we possess jurisdiction to review whether the set of facts identified by the district court' supports a claim beyond the bounds of the immunity at issue" (quoting *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir.2002))).

■ "We review the denial of a motion for summary judgment *de novo.* We apply the same test required of the district court and view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir.2008) (internal

quotation marks and citation omitted); *see also Walter*, 544 F.3d at 190 (noting that although the scope of our review in this context is limited, "we still apply the standard for summary judgment").

## III.

■ "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). At the time the District Court filed its opinion, *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), provided the controlling standard for analyzing claims of qualified immunity. Under *Saucier*'s two-step inquiry,

[f]irst, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right. If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was "clearly established." If the court concludes that the defendant's conduct did violate a clearly established constitutional or statutory right, then it must deny the defendant the protection afforded by qualified immunity.

*Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir.2006) (citing *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). Subsequently, however, the Supreme Court in Pearson clarified that "the *Saucier* procedure should not be regarded as an inflexible requirement." 129 S.Ct. at 811. Rather, "[t]he judges of

and Bahl from liability for their conduct in this case; thus, Bahl would be entitled to such immunity whether his alleged liability

under § 1983 were to derive from his own conduct or from his knowledge of Dry's conduct.

the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*, 129 S.Ct. at 818.

Applying *Saucier*, the District Court first found that, "[v]iewing the entire record in the light most favorable to Plaintiffs, ... Plaintiffs' procedural due process rights were violated based on the failure to receive a post-deprivation hearing in a period which would satisfy due process." Although "the Third Circuit Court of Appeals has not established a bright-line rule," the court noted that "[o]ther circuits, and indeed other district courts in this circuit, have held that delay in post-deprivation process of seventy-two (72) hours or greater is unconstitutional." Referencing this case law, the court found that "[t]he procedural due process right to a prompt post-deprivation hearing within the boundaries of seventy-two (72) hours was clearly established at the time of the violation. That a hearing held almost one week after the children were placed in custody violates due process was certainly clearly established." Furthermore, the court found that "the actions of the Defendant Dry [were] not objectively reasonable." Noting that the children were taken into the custody of Monroe County Children and Youth Services on January 10, and that plaintiffs were not afforded a hearing at which they could be present until January 16, almost a week later, the court determined "[i]t was not reasonable for the Defendant Dry to take the minors into protective custody without providing the Plaintiffs with a prompt hearing. This delay was clearly not reasonable, and Defendant Dry should have acted to have a hearing within a period of time that would comport with due process. Therefore, the Court finds Defendant Dry is ineligible for

qualified immunity on the post-deprivation procedural due process claim." Similarly, the court found that "[t]here is no evidence presented that Defendant Bahl made any effort to expedite the hearing so that it would occur within a time that would comport with procedural due process. Therefore, if it is found that Defendant Bahl had actual knowledge or acquiescence of the procedural due process claim, he too would be ineligible for qualified immunity."

▮ On appeal, defendants do not challenge the court's conclusion that plaintiffs were entitled, as a matter of procedural due process, to a post-deprivation hearing within 72 hours. And in light of *Pearson*, we need not reach this issue, as we find that, under the "clearly established" prong of the *Saucier* test, defendants should be afforded qualified immunity with respect to this claim. *See Pearson*, 129 S.Ct. at 822 (forgoing the first *Saucier* step and finding the defendants "are entitled to qualified immunity because [their conduct] did not violate clearly established law"). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. "This inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition," *id.* at 201, and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 129 S.Ct. at 822 (quoting *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotation marks omitted)); *see also Walter*, 544 F.3d at 191 (noting that we have characterized the second prong of the *Saucier* test as comprising two questions: "whether the right alleged to have been violated was

clearly established in the existing law at the time of the violation; and ... whether a reasonable official knew or should have known that the alleged action violated the plaintiffs' rights" (quoting *Rouse v. Plantier,* 182 F.3d 192, 196–97 (3d Cir.1999))). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.

■ Even if we assume that plaintiffs had a constitutional right to a post-deprivation hearing within 72 hours and that this right was clearly established at the relevant time, we consider it objectively reasonable for defendants to have believed, under the law existing at the time, that their particular conduct in this case was lawful and in keeping with this right. Here, it is undisputed that the children were taken into the custody of Monroe County Children and Youth Services at the end of the day on Friday and that Dry forwarded the relevant information to the agency's solicitor on Monday morning, leaving the remainder of the day for the petition to be filed and hearing to be held within the prescribed 72–hour period. The agency's solicitor did not file the petition until Tuesday morning, after that period

had elapsed, but there is no indication that Dry or Bahl was responsible for this delay. Furthermore, we have not found, and neither the able District Court nor plaintiffs have identified, anything in the record or law indicating that once Dry had forwarded the relevant information to the solicitor, either she or Bahl, in their respective capacities at Monroe County Children and Youth Services, had the authority or affirmative duty to intervene in the court's scheduling of the subsequent dependency hearing. Nor would we impose such a duty. Accordingly, we agree with defendants that they could reasonably have believed they had discharged their responsibilities with respect to plaintiffs' procedural due process rights "by advancing the case to the point where a hearing could take place" within the constitutionally prescribed time frame, and "could reasonably have expected that their attorney and the court would hold the hearing" in a timely fashion. Defs.' Br. 19. As we do not believe "the law ... put [defendants] on notice that [their] conduct would be clearly unlawful," we find "summary judgment based on qualified immunity is appropriate" in this case. *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.[6]

**6.** Plaintiffs identify various statutory provisions of Pennsylvania law to impugn defendants' conduct. For instance, plaintiffs note that Pennsylvania law requires "[a]n informal hearing ... be held promptly by the court or master and not later than 72 hours after the child is placed in detention or shelter care to determine whether his detention or shelter care is required." 42 Pa. Cons.Stat. Ann. § 6332(a) (West 2001 & Supp.2009); *see also* 23 Pa. Cons.Stat. Ann. § 6315(d) (West 2001 & Supp.2009) ("In no case shall protective custody under this chapter be maintained longer than 72 hours without an informal hearing under 42 Pa.C.S. § 6332...."). Furthermore, 23 Pa. Cons.Stat. Ann. § 6315(b) (West 2001 & Supp.2009) prohibits any child from "be[ing] held in protective custody for more than 24 hours unless the appropriate

county agency ... obtains an order from a court of competent jurisdiction permitting the child to be held in custody for a longer period."

Whether defendants are liable under state law for violating these provisions is not before us. To the extent plaintiffs point to these provisions to substantiate a finding of a constitutional violation in this case or to demonstrate the objective unreasonableness of defendants' conduct, such reliance is misplaced. As the District Court acknowledged, "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due process" for purposes of a § 1983 action alleging a Fourteenth Amendment violation. *Robison v. Via,* 821 F.2d 913, 923 (2d Cir. 1987); *see also Cleveland Bd. of Educ. v.*

## IV.

As noted, defendants also contend that they are entitled to absolute immunity for their actions in this case. "[T]he Supreme Court has consistently held that [42 U.S.C. § 1983] did not abolish long-standing common law immunities from civil suits." *Ernst v. Child & Youth Servs. of Chester County,* 108 F.3d 486, 493 (3d Cir.1997) (citing *Burns v. Reed,* 500 U.S. 478, 484, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Imbler v. Pachtman,* 424 U.S. 409, 418, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "Where the official claiming immunity occupies a governmental position that did not exist at common law, he may still be entitled to immunity if he performs official functions that are analogous to functions performed by those who were immune at common law." *Id.* at 494 (citing *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Under this " 'functional' approach . . . we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). For example, "[i]n *Burns,* the [Supreme] Court held that a prosecutor was absolutely immune from liability for his presentation of evidence in a probable cause hearing but was not absolutely immune for the provision of legal advice to police officers

investigating a case." *Ernst,* 108 F.3d at 495; *see also Van de Kamp v. Goldstein,* 129 S.Ct. 855, 859–61, 172 L.Ed.2d 706 (Jan. 26, 2009) (discussing the development of this functional approach).

In *Ernst,* we extended this rationale to social workers, holding that the defendants in that case were "entitled to absolute immunity for their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors, who were immune from suit at common law." 108 F.3d at 493; *see also Meyers v. Contra Costa County Dept. of Soc. Servs.,* 812 F.2d 1154, 1157 (9th Cir.1987). At the same time, "[l]ike our sister courts," we stated our "unwilling[ness] to accord absolute immunity to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." *Ernst,* 108 F.3d at 497 n. 7.

Applying *Ernst,* the District Court found defendants "have absolute immunity in this case with respect to whether to bring a child dependency hearing. However, caseworkers do not qualify for absolute immunity when investigating or administering cases. Therefore, we must consider if the CYS caseworkers are protected under qualified immunity." Thus, the court appears to have determined that some of defendants' challenged actions in this case were investigative or administrative, thereby falling outside the ambit of

*Loudermill,* 470 U.S. 532, 540–41, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Swipies v. Kofka,* 419 F.3d 709, 716–17 (8th Cir.2005). Accordingly, these state-law provisions do not inform our assessment of qualified immunity here—namely, whether 72 hours is the "clearly established" delineation of a constitutionally prompt post-deprivation hearing in this case, or whether defendants behaved in an objectively reasonable manner with respect to that right. *See Robison,* 821 F.2d at 922–23

("reject[ing] the district court's view that [the defendants] were not entitled to qualified immunity because their taking of the children violated state statutes," and finding that "[s]ince the taking of the children was undeniably objectively reasonable under the pertinent federal standards, [the defendants] were entitled to summary judgment dismissing [the plaintiff's] § 1983 claim based on that taking").

the quasi-prosecutorial immunity recognized in *Ernst.* The court did not, however, specify which actions these were, a noticeable omission in light of our functional approach to assessing absolute immunity. Defendants characterize the actions in question as "either (a) failing to immediately return custody to Angela Bayer and, in so doing, explicitly ignoring a court order; or (b) failing to file a second petition asking the court to move up the hearing date," and thus contend they are being sued for "prosecutorial acts that are properly shielded by absolute immunity." Defs.' Br. 14. We note, however, that the court may also have viewed defendants' conduct as the failure to act more quickly in initiating the dependency-hearing process (e.g., by forwarding the relevant material to the agency's solicitor) once the decision had been made to take the children into the custody of Monroe County Children and Youth Services and seek such a hearing—a characterization that might cast defendants' conduct in a more ministerial rather than prosecutorial light. As we find defendants are entitled to qualified immunity in this case, we need not resolve this ambiguity in the District Court's analysis nor determine whether defendants are entitled to absolute immunity with respect to their actions here.

## V.

For the foregoing reasons, defendants are entitled to qualified immunity with respect to plaintiffs' procedural due process claims. Accordingly, we will reverse the District Court's denial of summary judgment and remand for proceedings consistent with this opinion.