OPINION OF THE COURT
FUENTES, Circuit Judge:
Appellants Sat Bahl, William Browning, Jorge Puente, and Iretha Nolls appeal the decision of the District Court finding that they were not entitled to absolute or qualified immunity from Appellees’ procedural due process claim. The dispute in this case centers around the March 18, 2004 *786 seizure by law enforcement officials of three minor children from Appellees’ home and actions taken by various Appellants théreafter concerning the custody of the children. At issue in this appeal is whether Appellants — two administrators and two caseworkers employed by Monroe County Children and Youth Services (“MCCYS”) — were entitled to absolute or qualified immunity in connection with the allegedly unconstitutional delay between the date when the children were seized and the date that a post-deprivation hearing was convened. The District Court concluded that Appellants were not entitled to absolute or qualified immunity. For the reasons that follow, we conclude that Appellants were entitled to qualified immunity, and will reverse.
I.
Because we write exclusively for the parties, we discuss the underlying facts and procedural history only to the extent necessary to resolve the issues on appeal. In March 2004, Robert and Lynn Jarovits resided in a home in Monroe County, Pennsylvania, along with their adult son, Erik Jarovits; their adult daughter, Gabrielle Jarovits; their two minor children, Matthew and Dedric Jarovits; and Gabrielle’s minor child, Marcella Parker. For a period leading up to March 2004, the Jaro-vits residence was under surveillance by various federal, state, and local law enforcement agencies because Erik Jarovits was selling crack cocaine in and out of the home. FBI agents arrested Erik Jarovits outside of a Monroe County restaurant on March 12, 2004, charging him with selling and distributing crack cocaine.
On the same day as the arrest, law enforcement officers sought and obtained a warrant to search the Jarovits residence, and they executed the warrant later that evening. The officers found and seized crack cocaine and marijuana in two rooms of the home during the search. Believing that the presence of drugs and the “filthy” state of the residence rendered the home unsuitable for the three minor Jarovits children, (App.154), police officers reported the matter to MCCYS.
On March 18, 2004, six days after the search, two employees of MCCYS, Appellant Jorge Puente and Nicole Mellwaine, accompanied by two police officers, inspected the Jarovits residence. Conditions in the home were squalid: the floors were covered with garbage, pornographic materials and animal feces; the refrigerator was full of rotting food; and the upstairs bathroom was unsanitary.[1] Additionally, the inspecting officials discovered marijuana on a bedroom table. Based upon the conditions they observed in the Jarovits residence, as well as the fact of Erik Jarovits’ prior drug dealing activities in the home, Puente and Mellwaine determined that it was in the best interests of the minor children for the agency to take protective custody of the children and to initiate dependency proceedings in the Court of Common Pleas. Puente and Mellwaine, with the assistance of the two police officers accompanying them, removed the three minor children from the Jarovits residence and transported them to the MCCYS office.[2]
*787 Appellees filed the Complaint in this action on November 18, 2004 in the United States District Court for the Middle District of Pennsylvania. Although Appellees asserted a wide variety of claims premised upon federal and state law against numerous defendants, the only claim at issue in this appeal (and the only claim we address herein) is their claim, asserted pursuant to 42 U.S.C. § 1983, that because more than seventy-two hours elapsed between the date when the children were seized and the date when the court convened a hearing to address the propriety of the seizure, MCCYS employees Bahl, Browning, Puente and Nolls violated Appellees’ procedural due process rights. In support of their due process claim, Appellees relied upon a provision of Pennsylvania law which provides that when a child has been taken into protective custody, “[a]n informal hearing shall be held promptly by the court or master and not later than 72 hours after the child is placed in detention or shelter care to determine ... whether to allow the child to remain in the home would be contrary to the welfare of the child ...” 42 Pa. Cons.Stat. Ann. § 6332(a) (West 2001 & Supp.2009).
Appellants moved for summary judgment as to the claims asserted in the Complaint, arguing with respect to Appellees’ due process claim that they were entitled to absolute and qualified immunity. In its October 10, 2007 opinion, the District Court held, inter alia, that Appellants were not entitled to absolute or qualified immunity and denied the motion for summary judgment with respect to the due process claim. Appellants subsequently filed this appeal, in which they contest only the District Court’s conclusion that they are not entitled to absolute or qualified immunity. “We have jurisdiction pursuant to the collateral order doctrine, see Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and our review is plenary, see Larsen v. Senate of Cmwlth. of Pa., 154 F.3d 82, 87 (3d Cir.1998), cert. denied, 525 U.S. 1144, 119 S.Ct. 1037, 143 L.Ed.2d 45 (1999).” Rouse v. Plantier, 182 F.3d 192, 196 (3d Cir.1999).
II.
As we now explain, we conclude that Appellants were entitled to qualified immunity from Appellees’ due process claim, and that summary judgment as to that claim should have been entered in Appellants’ favor.[3] The doctrine of qualified immunity “balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.” Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). In service of these dual interests, *788 the doctrine immunizes government officials from liability and from suit “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
A government official’s entitlement to qualified immunity turns on two considerations: whether the plaintiff has alleged that the defendant violated a constitutional right, and “whether the right that was violated was clearly established, or, in other words, ‘whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.’ ” Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir.2007) (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The Supreme Court held in Pearson “that the Saucier procedure should not be regarded as an inflexible requirement,” and that courts may “exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed fmst in light of the circumstances in the particular case at hand.” Pearson, 129 S.Ct. at 813, 818.
Focusing on the second prong — whether it was objectively reasonable for Appellants to have believed that they acted lawfully under the circumstances they confronted in this case — we conclude that Appellants are entitled to qualified immunity from Appellees’ procedural due process claim. While this appeal was pending, a different panel of this Court addressed the very question at issue herein in Bayer v. Monroe County Children and Youth Services, 577 F.3d 186 (3d Cir.2009). As in the case before us, the plaintiffs in Bayer asserted a procedural due process claim based upon the fact that employees of MCCYS had taken custody of their children, but the post-deprivation hearing for the seizure did not take place within seventy-two hours.[4] Id. at 191-92.
The Bayer Court held that “under the ‘clearly established’ prong of the Saucier test, defendants should be afforded qualified immunity with respect to [the plaintiffs’ procedural due process] claim.” Bayer, 577 F.3d at 192. The Court explained:
Here, it is undisputed that the children were taken into the custody of Monroe County Children and Youth Services at the end of the day on Friday and that [the MCCYS caseworker] forwarded the •relevant information to the agency’s solicitor on Monday morning, leaving the remainder of the day for the petition to be filed and hearing to be held within the prescribed 72-hour period. The agency’s solicitor did not file the petition until Tuesday morning, after that period had elapsed, but there is no indication that [the caseworker or her supervisor] ... was responsible for this delay. Furthermore, we have not found, and neither the able District Court nor plaintiffs have identified, anything in the record or law indicating that once [the caseworker] had forwarded the relevant information to the solicitor, either she or [her supervisor], in their respective capacities at Monroe County Children and Youth Services, had the authority or affirmative duty to intervene in the court’s scheduling of the subsequent dependency hearing. Nor would we impose such a duty. Accordingly, we agree with defendants that they could reasonably have believed they had discharged their responsibilities with respect to plaintiffs’ procedural due process rights by advancing the case to the *789 point where a hearing could take place within the constitutionally prescribed time frame, and could reasonably have expected that their attorney and the court would hold the hearing in a timely fashion.
Id. at 193 (internal quotations and citations omitted). The Court likewise noted that “[t]o the extent plaintiffs point to ... provisions [of Pennsylvania statutory law] to substantiate a finding of a constitutional violation in this case or to demonstrate the objective unreasonableness of defendants’ conduct, such reliance is misplaced,” because “[fjederal constitutional standards rather than state statutes define the requirements of procedural due process for purposes of a § 1983 action alleging a Fourteenth Amendment violation.” Id. at 193 n. 6 (internal quotations and citations omitted).
Bayer is on all fours with the appeal before us, and it compels us to reverse the District Court’s conclusion that Appellants are not entitled to qualified immunity. See Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 426 (3d Cir.2008) (under Thúd Circuit Internal Operating Procedures, the holding of a previous panel in a precedential opinion is controlling upon the rulings of subsequent panels). Like the Bayer defendants, the MCCYS Appellants herein could reasonably have believed that they “discharged their responsibilities with respect to plaintiffs’ procedural due process rights by advancing the case to the point where a hearing could take place within the constitutionally prescribed time frame.” Bayer, 577 F.3d at 193. Indeed, whereas in Bayer the MCCYS defendants did not forward the case to the agency solicitor until nearly three days after the minors had been taken into custody, in the case before us, MCCYS filed the dependency petition for the Jarovits children the day after the children were taken into custody; that is, Appellants “advanced] the case to the point where a hearing could take place” even more swiftly than did the MCCYS employees in Bayer. Id. Moreover, as was the case in Bayer, there is nothing in the record before us to indicate that once Appellants had forwarded the relevant information to the agency solicitor and MCCYS had filed a petition in the Court of Common Pleas, any Appellant “had the authority or affirmative duty to intervene in the court’s scheduling of the subsequent dependency hearing.” Id. Finally, as in Bayer, whether Appellants “are liable under state law for violating ... provisions [governing the timeliness of post-deprivation child custody hearings] is not before us,” because “[fjederal constitutional standards rather than state statutes define the requirements of procedural due process” for a section 1983 claim. Id. at 193 n.6 (citation omitted). In sum, we conclude that whether or not Appellees have alleged a due process claim, “the right that was [allegedly] violated was [not] clearly established,” Curley, 499 F.3d at 207, meaning that Appellants are entitled to qualified immunity.
III.
For the foregoing reasons, we conclude that Appellants are entitled to qualified immunity from Appellees’ procedural due process claim. We will therefore reverse the District Court’s denial of Appellants’ motion for summary judgment as to that claim and remand for further proceedings consistent with this opinion.

. Appellees do not dispute these facts concerning the cleanliness of the residence, but they attribute the state of the home to the drug raid which had taken place six days before the MCCYS inspection.

. Appellants contend that the police removed the minors from the home, whereas Appellees maintain that Puente and Mellwaine were responsible for their removal. The parties' dispute over this fact does not impact our resolution of the issues addressed in this appeal.

. Because we find that Appellants were entitled to qualified immunity, we do not address their alternative argument that they were entitled to absolute immunity.

. The plaintiffs in Bayer were represented by the same attorney who represents Appellees, and both cases were assigned to the same District Court judge.