NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 08-3131
_____

CHILDREN FIRST FOUNDATION, INC.
a New York non-profit corporation duly
registered in the State of New Jersey;
DR. ELIZABETH REX,

Appellants,

v.

DIANE LEGREIDE, Individually and in her official capacity
as former Chief Administrator of the New Jersey Motor
Vehicle Commission; SHARON HARRINGTON, Individually
and in her official capacity as acting Chief Administrator of
the New Jersey Motor Vehicle Commission; DARIA GERARD,
Individually and in her official capacity as Director of Customer
Operations for the New Jersey Motor Vehicle Commission;
STEVE ROBERTSON, Individually and in his official capacity as
Director of Legal and Regulatory Affairs for the New Jersey Motor
Vehicle Commission; PETER C. HARVEY, Individually and in his
official capacity as Attorney General for the State of New Jersey;
JAMES E. McGREEVEY, Individually and in his official capacity as
Governor of the State of New Jersey


On Appeal from the United States District Court
for the District of New Jersey
No. 3:04-cv-02137
District Judge: Judge Joel A. Pisano

Argued April 14, 2009

Before: McKEE, SMITH, *Circuit Judges* and

STEARNS,[*] *District Judge*

(Opinion filed : April 9, 2010)

Jeffrey A. Shafer
Alliance Defense Fund
801 G Street, N.W.
Suite 509
Washington, DC 20001-0000
Argued for Appellants


Andrea M. Silkowitz, Esq.
Office of Attorney General of New Jersey
124 Halsey Street
P.O. Box 45029
Newark, NJ 07102-0000
Argued for Appellees

Larry R. Etzweiler, Esq.
Office of Attorney General of New Jersey
P.O. Box 112, A2
25 Market Street
Trenton, NJ 08625-0000
Counsel for Appellees

OPINION

McKEE, *Circuit Judge*.

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that Defendants'

denial of their request for a speciality license plate was the result of unconstitutional

viewpoint discrimination.  The district court dismissed the action after concluding that

Defendants were entitled to qualified immunity.  For the reasons that follow, we will

---

[*] The Honorable Richard G. Stearns, District Judge for the United States District Court for the District of Massachusetts, sitting by designation.

2

reverse and remand for further proceedings.[1]

## I.

Inasmuch as we are writing primarily for the parties who are familiar with this litigation, we need not detail its factual or procedural background. Rather, we briefly note that the State of New Jersey has authorized the issuance of special organization vehicle registration ("SOVR") license plates to members of non-profit community groups, alumni associations, and service organizations that comply with certain statutory requirements. *See* N.J.S.A. 39:3-27.35. The Chief Administrator of the Motor Vehicle Commission has final authority to approve an organization's application for a SOVR plate and to determine "the use and arrangement of the name, initials, or logotype of the organization on the registration plates." *See* N.J.S.A. 39:3-27.36 to -27.37.

This suit arose after the Chief Administrator refused to approve Plaintiffs' proposed SOVR plate design. Although the design had been initially approved,

---

[1] As we discuss below, we reverse the order granting qualified immunity on Plaintiffs' First Amendment claim. We will also reverse the dismissal of Plaintiffs' Equal Protection claim as, in accordance with our conclusion below that Plaintiffs sufficiently plead viewpoint discrimination, we believe Plaintiffs have stated a claim for which relief can be granted, and that qualified immunity is inappropriate at this point in the proceedings. We will also vacate the dismissal of Plaintiffs' Due Process claim as it appears that the district court failed to address the crux of Plaintiffs' argument, namely that the requirements of New Jersey's special license plate program are unconstitutionally vague. *See* Appellants' Br. 38 (Children First Foundation "brought its due process claim against Defendants for their enforcement of vague laws which allow for unbridled enforcement discretion.").

Plaintiffs were subsequently informed that the slogan included in their emblem, "Choose Life," was "controversial" and therefore would not be permitted. It is undisputed that Plaintiffs complied with all of the procedural requirements for obtaining the SOVR plate, and otherwise complied with the controlling statute.

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants abridged Plaintiffs' First Amendment right to freedom of speech by rejecting their application. More specifically, Plaintiffs alleged that Defendants rejected their proposed design because of Defendants' "disagreement with [the] life-affirming viewpoint expressed by the plate." JA-68. According to Plaintiffs, Defendants thereby "engaged in and facilitated content-based and viewpoint-based discrimination." *Id.*

Defendants moved to dismiss Plaintiffs' action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In the alternative, Defendants asserted the defense of qualified immunity and moved to dismiss Plaintiffs' claims for damages. The district court initially denied the motion to dismiss in its entirety on the grounds that judicial economy favored addressing these issues only after a full and complete record had been developed, and Defendants appealed. On appeal, we noted that the district court had not had the benefit of our opinion in *Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006), when it denied the motion to dismiss. *See Children First Found., Inc. v. Legreide*, 259 Fed. Appx. 444, 445 (3d Cir. 2007). In *Thomas*, we emphasized that when a qualified immunity defense is raised, discovery should not proceed until the court

4

evaluates whether the plaintiff has alleged the violation of clearly established rights. As the district court had failed to do this, we vacated its denial of Defendants' motion to dismiss on grounds of qualified immunity, and remanded so that the court could address the defense. *Id.* at 446.

On remand, the district court concluded that Defendants were entitled to qualified immunity,[2] and this appeal followed.[3]

## II.

Qualified immunity is an affirmative defense which must be decided as a matter of law by the court. *Carswell v. Borough of Homestead,* 381 F.3d 235, 242 (3d Cir. 2004). A state actor who infringes on a plaintiff's constitutional rights is entitled to qualified immunity if it appears that the challenged conduct "[did not] violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[2] Although qualified immunity protects government officials from liability only for civil damages, *see Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009), the district court apparently dismissed Plaintiffs' claims for declaratory and injunctive relief also based on its conclusion that Plaintiffs had failed to allege a violation of a clearly established right. However, since we disagree with the district court's conclusion that Defendants are entitled to qualified immunity in the first instance, we need not separately address that error.

[3] We exercise plenary review over a district court's decision to grant a motion to dismiss based on qualified immunity. *McLaughlin v. Watson*, 271 F.3d 566, 570 (3d Cir. 2001). We accept all well-pleaded factual allegations as true and draw all reasonable inferences arising from those allegations in favor of the nonmoving party. *Hayes v. Gross,* 982 F.2d 104, 105-06 (3d Cir. 1992).

5

*Kopec v. Tate,* 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court held that when faced with a claim of qualified immunity, a court should first determine whether the allegations establish a violation of a constitutional right when viewed in the light most favorable to the plaintiff. If no constitutional violation is established, the court's inquiry is finished. However, if a constitutional violation is adequately alleged, the court must then determine whether the claimed right was "clearly established" at the time of the alleged violation.[4] *Id*.

In most instances, an inquiry into whether challenged restrictions on speech rise to the level of a constitutional violation turns on the nature of the government property on which expression is restricted. The Supreme Court has "adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius v. NAACP Legal Def. and Educ. Fund*, 473 U.S. 788, 800 (1985) (internal quotation marks and citations omitted). The Court has identified three types of government fora: the traditional public forum, the designated forum, and the

---

[4] In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Court explained that the order of these inquiries, though often advisable, should no longer be mandatory. "[T]here will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id.* at 820.

nonpublic forum. *See id.* at 802.

However, this forum analysis does not apply to restrictions on expression that are based on a speaker's viewpoint. Such restrictions have long been held to be presumptively unreasonable regardless of the forum involved. Viewpoint-based restrictions can only be upheld in the rare instance that they survive "strict scrutiny." *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828-30 (1995).

Here, Plaintiffs alleged that Defendants rejected their proposed plate design because of Defendants' discomfort with the viewpoint it expressed. According to Plaintiffs, Defendants' agent informed them that the Motor Vehicle Commission would not approve their plate because the slogan Plaintiffs wished to include, "Choose Life," was "controversial." JA-59. The agent also informed them that "Pro Life" would be unacceptable, but that they could use such alternate phrases as "Choose Adoption" or "Adopt a Baby." *Id.* Although Plaintiffs acknowledged that the Chief Administrator later asserted that the denial was for a viewpoint-neutral reason, because all "advocacy messages" were prohibited on SOVR plates, Plaintiffs also alleged that "other organizations have been allowed to express their chosen messages via slogans, advocacy phrases, commonly used phrase names, and/or other identifiers," thereby calling into doubt the Chief Administrator's stated rationale. JA-54, 61-62.

Accepting these factual allegations as true and drawing all inferences in Plaintiffs' favor, as we must for the purposes of a motion to dismiss, Plaintiffs make plausible a

7

claim of viewpoint discrimination. As already noted, engaging in viewpoint discrimination when not necessary to further a compelling governmental purpose is a violation of a clearly established constitutional right. Granting Defendants qualified immunity is therefore patently inappropriate at this stage of the proceedings.

The district court granted the motion to dismiss because it failed to correctly apply the standard of review. At the first step of the qualified immunity analysis, the district court reasoned that whatever Defendants' agent said to Plaintiffs was immaterial because "[t]he statute clearly provides that the Chief Administrator retains the sole discretion to determine [what designs] are allowed on an SOVR plate." JA-21. Accordingly, the district court concluded that Plaintiffs' application was denied for the viewpoint-neutral reason asserted by the Chief Administrator – because advocacy messages were not permitted on SOVR plates. The court could not have reached this conclusion, however, without improperly disregarding the reasonable inference flowing from Plaintiffs' allegations that the Chief Administrator's explanation was a pretext for unconstitutional viewpoint discrimination.

Having found that the denial was viewpoint-neutral, the district court then engaged in a forum analysis, determined that the SOVR license plate was a limited public forum, and concluded that the Chief Administrator's stated policy of not permitting advocacy slogans on license plates was reasonable. On this basis, the court noted that it would find no constitutional violation. The court, however, acknowledged that its

8

analysis thus far was not consistent with the appropriate legal standard. It stated:

> The Court . . . recognizes that the present motion is a Rule 12(b)(6) motion to dismiss and, as such, the Court must accept as true all of the well-pleaded factual allegations. Thus, the Court will view Plaintiffs' factual allegation of the July 2, 2003 phone conversation [in which defendants' agent allegedly said that Plaintiffs' proposed design was unacceptable because it was "controversial"] as true, and finds that a constitutional violation is alleged. The Court now turns to whether there was a violation of clearly established law.

JA-21.

At the second step of the qualified immunity analysis, however, the district court failed to heed its own admonition, and again improperly applied the motion to dismiss standard. The court reviewed the case law as it existed when Defendants rejected Plaintiffs' proposed plate design and found "a lack of consensus regarding how to regulate controversial messages on license plates." JA-23. It therefore concluded that a reasonable actor could have believed that banning the use of advocacy messages on plates was both reasonable, and as applied universally, viewpoint-neutral.

This depiction of Defendants' actions is again inconsistent with Plaintiffs' allegations. As discussed above, Plaintiffs allege that Defendants objected to Plaintiffs' proposed plate design because the advocacy message was "controversial," and that Defendants attempted to substitute less provocative messages, such as "Choose Adoption" or "Adopt a Baby," for the more evocative "Choose Life" and "Pro Life." Furthermore, according to Plaintiffs' allegations, Defendants had permitted other

9

organizations to include advocacy messages on their SOVR plates.[5]  Thus, the court

should not have focused its inquiry on whether a universal ban on advocacy messages

violated Plaintiffs' clearly established rights.  Rather, the court should have focused on

whether the prohibition of certain advocacy messages and the permission of others based

solely on the viewpoints expressed constituted such a violation.

In concluding that Plaintiffs' rights were not clearly established, the district court

relied heavily on two purportedly similar cases in which Courts of Appeals appeared to

reach different results.  These cases, *Sons of Confederate Veterans, Inc. v. Comm'r of the

Virginia Dep't of Motor Vehicles*, 288 F.3d 610 (4th Cir. 2002), and *Perry v. McDonald*,

280 F.3d 159 (2d Cir. 2001), simply do not support the district court's conclusion in this

case.

In *Perry,* the Court of Appeals for the Second Circuit held that the Vermont

Department of Motor Vehicles had not violated the plaintiff's First Amendment right to

freedom of speech by revoking as erroneously issued her "vanity" license plate bearing

the letters: "SHTHPNS."[6]  Under the applicable statute, a vehicle owner was permitted to

obtain a vanity plate by paying a fee, so long as the contents of the plate were not

---

[5] The district court disregarded Plaintiffs' allegations on this point, and instead credited Defendants' claims that they had not permitted other organizations to include advocacy messages on their plates.

[6] This lettering stood for "Shit Happens."  *Perry*, 280 F.3d at 163.  Perry was inspired to choose the message based on an Alcoholics Anonymous slogan, "Shit happens (so don't let life's problems drive you to drink)."  *Id.* at 164.

"offensive or confusing to the general public." *Perry*, 280 F.3d at 163. The Department of Motor Vehicles sought to revoke plaintiff's plate because it was "offensive." *Id.* at 164. Discovery revealed that the Department generally did not approve any vanity plates with "offensive scatological terms," and that Perry's plate had been approved in error. *Id.* at 169-71.

The court concluded that the Department's restriction on Perry's speech was viewpoint-neutral, and therefore constitutional. The court explained:

> It is apparent that Vermont's policy does not oppose Perry's philosophical views as reflected in the vanity plate. Vermont's policy prohibits Perry's vanity plate not because it stands for "Shit happens (so don't let life's problems drive you to drink)," but because Perry chose to express that viewpoint using a combination of letters that stands in part for the word 'shit." This restriction does not discriminate on the basis of viewpoint.

*Id.* at 170.

In *Sons of Confederate Veterans,* on the other hand, the Court of Appeals for the Fourth Circuit held that Virginia had violated the plaintiff's First Amendment right to freedom of speech by precluding it from obtaining a license plate displaying the Confederate flag. In that case, the state had allowed "supporters of various organizations" to obtain special license plates. *Sons of Confederate Veterans*, 288 F.3d at 613. Each organizational plate had to be separately authorized by the legislature through "special-plate-authorizing statutes." *Id.* at 626. Although the letter inviting

11

organizations to submit proposed plate designs instructed each organization to include a logo in its submission, the statute enacted for the Sons of Confederate Veterans stated that "[n]o logo or emblem of any description shall be displayed or incorporated into the design . . . ." *Id*. at 613. That restriction prevented the organization from displaying its logo - the Confederate flag - on its specialty plate. Discovery revealed that none of the other special-plate-authorizing statutes contained a logo restriction.

In rejecting the defendants' argument that the logo restriction was merely content-based and not viewpoint-based, the court explained:

> [t]he nature of the restricted speech, the lack of a generally applicable content-based restriction, the breadth of the special plate program . . . and the lack of any restrictions in statutes authorizing special plates other than the [Sons of Confederate Veterans's] belie the . . . argument that the restriction in question is merely a content-based restriction. Rather, the logo restriction works viewpoint discrimination against the [Sons of Confederate Veterans].

*Id*. at 626. Because the restriction was "not viewpoint-neutral, . . . the restriction [was] presumptively unconstitutional in any forum." *Id*. at 623.

Together, the district court read these two cases to indicate a lack of clarity in the applicable law. However, to the extent that the cases are arguably in tension, that tension is not relevant here as both cases reinforce the constitutional limitation on viewpoint discrimination. Although the two cases do highlight the difficulty of distinguishing

12

content-based discrimination from viewpoint-based discrimination,[7] Plaintiffs here clearly alleged viewpoint discrimination. Neither *Perry* nor *Sons of Confederate Veterans* in any way challenges the established principle that the government must "abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

Since Plaintiffs allege that Defendants violated clearly established rights of which a reasonable person would have known, we will reverse the district court's order granting Defendants' motion to dismiss on qualified immunity grounds, and remand for further proceedings consistent with this opinion.

---

[7] As the Supreme Court noted in *Rosenberger*, "discrimination against one set of views or ideas is but a subset or particular instance of the more general phenomenon of content discrimination. . . . And, it must be acknowledged, the distinction is not a precise one." 515 U.S. at 830-31.