**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2907
_____

JOSHUA OTERO, as Administrator of the Estate of
Virgen Martinez, Deceased

v.

POLICE OFFICER CHRISTIAN KANE; POLICE OFFICER
ALEXANDER HERNANDEZ; CITY OF PHILADELPHIA;
TAHIR ELLISON

Police Officer Alexander Hernandez; Police Officer
Christian Kane,

         Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cv-04141)
Magistrate Judge: Honorable Scott W. Reid
_____

Argued: September 16, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO,
*Circuit Judges*

(Filed:  December 5, 2025)

Adam R. Zurbriggen          [**Argued**]
CITY OF PHILADELPHIA
LAW DEPARTMENT
17th Floor
1515 Arch Street
Philadelphia, PA 19102
    *Counsel for Appellants*

Charles L. Becker
Kimberly M. Collins
Ruxandra M. Laidacker     [**Argued**]
Helen A. Lawless
KLINE & SPECTER
1525 Locust Street
19th Floor
Philadelphia, PA 19102
    *Counsel for Appellee*

Kelly J. Fox
GEROLAMO MCNULTY DIVIS & LEWBART
121 S Broad Street
Suite 1400
Philadelphia, PA 19107
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

2

**BIBAS**, *Circuit Judge*.

Every day, police officers make snap judgments to chase dangerously fleeing suspects. During the chase, regrettably, bystanders sometimes get hurt. Yet officers are not constitutionally liable for those injuries unless their judgments are not just mistaken but egregious, shocking the conscience.

Here, Philadelphia police officers witnessed drug deals. The dealer took off, running a red light and driving fast and dangerously; the officers made a split-second decision to chase him. That chase stopped when the dealer crashed into another car, killing an innocent bystander. The bystander's son is suing the officers for recklessly endangering others and so violating the Fourteenth Amendment by giving chase. But because the officers did not intend to harm anyone, we will reverse and instruct the District Court to enter partial summary judgment for the officers.

## I. POLICE CHASED A DRUG DEALER, WHO CRASHED INTO AND KILLED A BYSTANDER

One morning, Officers Christian Kane and Alexander Hernandez were dispatched to Philadelphia's Kensington neighborhood to investigate drug dealing. Arriving in a marked police car, they saw a large crowd gathered around an SUV and someone handing out small items to the crowd. Officer Hernandez got out of the car, walked toward the crowd, and made eye contact with the SUV's driver, Tahir Ellison. Ellison then drove off.

Hernandez got back in the police car, and the officers followed Ellison at a normal speed. They turned on the police

lights, sounded the siren several times, and followed for seven blocks, but he did not pull over. Then he blew through a red light, and so did the officers. Ellison turned the wrong way down a one-way street, and the officers followed. Next, he turned onto a major avenue and sped up, going roughly twice the 30-mile-per-hour speed limit. The officers followed almost as fast, reaching 55 miles per hour. When Ellison ran another red light, he crashed into Virgen Martinez's car, killing her. Ellison later pleaded guilty to third-degree murder, aggravated assault, and driving under the influence of marijuana.

The officers' chase, especially the dangerous part of it, was brief. From the time Ellison turned the wrong way down the one-way street to the crash, only 39 seconds passed. From running the first red light to the crash, they covered eight blocks—less than half a mile. However brief, the chase violated Philadelphia Police Department policy, which authorizes car chases only when needed to "prevent … death or serious bodily injury," "stop a suspect who attempted a forcible felony," or "stop a suspect who [has] a deadly weapon." JA 11.

Joshua Otero, Martinez's son and the representative of her estate, sued the officers and others under 42 U.S.C. § 1983 as well as state law. He alleged that by chasing Ellison at high speed in a densely populated neighborhood during the morning rush hour, the officers had "consciously disregarded a great risk of serious harm" to Martinez, causing her death. Supp. App. 16 ¶ 63. This, Otero asserted, violated Martinez's Fourteenth Amendment right to substantive due process. The parties consented to proceed before a magistrate judge.

4

The officers moved for partial summary judgment, insisting that they never intended to harm anyone and that they deserved qualified immunity. Though the magistrate agreed that there was no evidence of intent to harm, he denied summary judgment both on the merits and on qualified immunity. But he certified an interlocutory appeal of these issues to us under 28 U.S.C. § 1292(b). We review de novo. *Bayer v. Monroe Cnty. Child. & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009).

## II. BECAUSE THE OFFICERS DID NOT INTEND TO HARM, THEY CANNOT BE LIABLE

### A. The culpability standard depends on how much time police have to decide

When a private person (like Ellison) harms another private person (like Martinez), police are seldom liable under the Fourteenth Amendment. To be liable for creating a danger that violated someone's constitutional rights, police must act so culpably that their behavior "shocks the conscience." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). This culpability standard turns on timing—the less time an officer has to act, the less blameworthy a flawed decision is. We have recognized three categories of culpability:

1) If the situation was "hyperpressurized," requiring "split-second decisions," the officer is not liable unless he intended to harm.

2) If the situation gave the officer hours or minutes to engage in "hurried deliberation," the officer is not liable unless he "consciously disregarded … a great risk of serious harm."

5

3) If the situation was "unhurried" and left time for "careful deliberation," the officer can be liable if he was "deliberately indifferent" to the risk of harm.

*Id.* at 717–18 (cleaned up); *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018) (cleaned up).

Most police chases fall into Category 1, triggering the intent-to-harm standard. In the leading case on point, a motorcyclist sped away from police at up to 100 miles per hour through a residential neighborhood. Police chased the motorcycle for 75 seconds over 1.3 miles until it tipped over and the police car hit the motorcycle passenger, killing him. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 837 (1998). The Supreme Court "h[e]ld that," when officers pursue suspects in "high-speed chases," their level of culpability does not shock the conscience unless they "inten[d] to harm suspects physically or to worsen their legal plight." *Id.* at 854. Likewise, when a car took off through a residential neighborhood at up to 70 miles per hour before crashing into a bystander, police were not liable because they had not intended to injure anyone. *Davis v. Twp. of Hillside*, 190 F.3d 167, 169, 170–71 (3d Cir. 1999). It did not matter that, by chasing the car, the officers had violated police regulations. *Id.* at 170. In both cases, the officers had mere moments to decide whether to pursue, so both fit comfortably in Category 1. *Id.* at 171 (officers' decision was "instantaneous"); *Lewis*, 523 U.S. at 855 (officer's response was "practically instantaneous").

But when police have more time and freedom to choose, the culpability standard is lower. In another case, an officer saw a driver commit a summary traffic offense. The officer had

6

time to deliberate. There was no sign that the driver was fleeing the officer, posed a danger, or knew he was being chased. And other police officers waited to intercept him down the highway. Even so, the officer recklessly chased him at more than 100 miles per hour, lost control around a curve, and smashed into another car, injuring its driver and killing its passenger. *Sauers*, 905 F.3d at 715. The officer "had at least some time to deliberate" about whether and how to give chase, "there was no emergency," and the suspect was not "actively fleeing" or "endangering the public." *Id.* at 718. Thus, we applied Category 2's conscious-disregard standard, holding that the officer could be liable for driving recklessly. *Id.*

## B. We start the clock when officers must choose whether to endanger the public

To figure out the relevant timeframe for culpability, we need to know when to start the clock. The officers focus on the little more than 39 seconds from when Ellison ran the first red light to when he crashed into Martinez. The magistrate judge refused to pick a starting time, concluding that a jury should decide whether to count the first seven blocks. Otherwise, he feared, every police chase would be hyperpressurized, requiring intent to harm.

We disagree. Officers cannot be liable for following a suspect lawfully and safely at an ordinary speed. Nothing about following a suspect or turning on police lights and a siren is inherently risky or dangerous to the public.

Rather, our precedent starts running the clock when, in the totality of the circumstances, an event occurs that requires officers to decide whether to pursue a suspect *dangerously*. In

7

*Davis*, for example, we focused not on when police first pulled alongside the suspect's car, but on their "instantaneous" decision to speed up once the suspect did. 190 F.3d at 171; *accord Lewis*, 523 U.S. at 855 (describing officer's decision to chase motorcycle once it sped off as "practically instantaneous," even though whole chase took 75 seconds and spanned 1.3 miles). By contrast, the officer in *Sauers* "had at least some time to deliberate *before deciding whether and how to pursue*." 905 F.3d at 718 (cleaned up; emphasis added). Because he had time to "contemplat[e]" his choice, he could be liable for choosing recklessly. *Id.*

## C. The officers are not liable because they did not intend to harm anyone

This case is far more like *Lewis* and *Davis* than *Sauers*. The suspect was fleeing and ignoring signals to stop, so the officers had no time to waste. When Ellison gunned it through the first red light and began to "actively flee[]," his flight became dangerous, and the officers had a split second to either follow suit or let him get away. *Id.* So this case falls into the first Category.

Even if we look beyond that moment, the result is the same. After Ellison ran the first red light, the chase covered less than half a mile and ran less than a minute—shorter and quicker than the chase in *Lewis*. Either way, Otero must show intent to harm. But as the magistrate judge recognized, he cannot. And here, as in *Davis*, it does not matter that the officers violated police department rules. 190 F.3d at 170. The officers still lacked the requisite intent, so they cannot be liable for violating Martinez's constitutional rights.

### III. In Any Event, Qualified Immunity Shields the Officers

Even if the officers had violated the Fourteenth Amendment, qualified immunity would shield them from liability. To apply qualified immunity, we must first define the right specifically, based on the particular facts. *Sauers*, 905 F.3d at 716. The magistrate judge never did so explicitly. He just noted that the general shock-the-conscience standard was clearly established. That is not enough.

*Sauers* modeled how to do this step. There, we defined the right as "one not to be injured or killed as a result of a police officer's *reckless* pursuit of an individual suspected of a *summary traffic offense* when there is no pending emergency and when the suspect is *not actively fleeing* the police." *Id.* at 717 (emphases added). Following that example, we define the right here as one not to be injured or killed as a result of an officer's recklessly pursuing an individual suspected of drug dealing or a comparably serious crime who is driving dangerously and actively fleeing the police.

Next, we must figure out if a reasonable officer would have been on notice that his conduct would violate that right. A right is not clearly established unless "Supreme Court precedent, our own precedent, or a consensus of authority among the courts of appeals placed that right beyond debate." *Id.* at 719. Because the magistrate judge did not define the right specifically enough, he did not see that no case has clearly established the relevant right. *Sauers* is distinguishable; it dealt with neither a dangerously fleeing driver nor a criminal suspect (setting aside the minor traffic infraction). 905 F.3d at 715–16. What is more,

9

for police chases like the one here, *Lewis* requires intent to harm. 523 U.S. at 837, 854. *Sauers* did not and could not overrule it. We cannot say that *Sauers* "placed the … constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). So qualified immunity shields the officers.

\* \* \* \* \*

The events of that morning, and Martinez's death, were tragic. But Officers Kane and Hernandez are not liable for Ellison's reckless flight. They made a snap judgment to chase a drug dealer fleeing dangerously through the streets of Philadelphia. We ask not whether in hindsight they chose rightly, but whether they intended to cause harm. Because they did not, the U.S. Constitution and § 1983 provide no remedy. We will reverse and remand with instructions to enter partial summary judgment for the officers on Count I.